# **<u>EXHIBIT 1</u>**

E-FILED IN OFFICE - MX
TIANA P. GARNER
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**21-A-02388-3**
3/30/2021 10:19 AM

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior** or ☐ **State Court of** _____ **County**

| **For Clerk Use Only** | **21-A-02388-3** |
|---|---|
| **Date Filed** _____  **MM-DD-YYYY** | **Case Number** _____ |

### Plaintiff(s)

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

### Defendant(s)

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____   **Bar Number** _____   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**                **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
                                                              **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

Version 1.1.18

Copy from re:SearchGA



## This page inserted to separate pleadings

E-FILED IN OFFICE - MX
TIANA P. GARNER
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**21-A-02388-3**
**3/30/2021 10:19 AM**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **BENJAMIN FISHEL-BROWN and** )<br>**STEPHANIE FISHEL-BROWN,** )<br>)<br>    **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**STATE FARM FIRE AND CASUALTY** )<br>**COMPANY,** )<br> **a foreign corporation,** )<br>)<br>    **Defendant.** ) | **CIVIL ACTION FILE NO.:**<br>_____<br><br>**21-A-02388-3** |

## COMPLAINT

**COMES NOW** Plaintiffs Benjamin Fishel-Brown and Stephanie Fishel-Brown, by and through counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, STATE FARM FIRE AND CASUALTY COMPANY, and in support hereof, states as follows:

## PARTIES

1.

Plaintiffs are adult resident citizens of Cherokee County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the business of insuring risks and properties located throughout the United States, including Georgia. Defendant maintains an office at 40 Technology Parkway South, Suite 300, Norcross, GA 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

Copy from re:SearchGA

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of insurance claim, and the Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the State of Georgia, and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

In consideration of the premiums paid to Defendant by the Plaintiffs, Defendant issued its Policy No. 11EPY5264 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A." The Policy insures against property damage to Plaintiffs' home located at 602 Bentley Falls Ct, Canton, GA 30114 (the "Insured Property" or the "home"), and the Policy likewise insures against loss of wind and hail damage. Specifically, the Policy provides coverage for "Dwelling including attached structures" and "Personal property owned or used by an insured person" with a deductible of $3,449.00 per occurrence. See Exhibit "A".

Copy from re:SearchGA

7.

The Policy covers property repairs on a full replacement cost basis, "the whole amount of loss for property covered". <u>See</u> Exhibit "A".  The Policy is an all-perils policy providing coverage for all "sudden and accidental direct physical loss to property".  <u>See</u> Exhibit "A."

8.

The Policy covers various types of expenses, including mitigating expenses for the reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss.  <u>See</u> Exhibit "A."

## **STORM DAMAGE TO THE INSURED PROPERTY**

9.

On, or about October 29, 2020, a severe storm caused direct physical loss of, or damage to, the Plaintiffs' home.  The Policy was in effect at the time of the above-referenced storm.

10.

Plaintiffs promptly and timely notified Defendant of the storm damage to their home as a result of the wind and hail storm, and made a claim pursuant to the Policy.  As a result, Defendant assigned Brandon Waller ("Waller") to investigate Plaintiffs' claim for loss of damage.  Waller was authorized as Defendant's representative and agent for purposes of the storm-related claim.

11.

At all times, Plaintiffs made themselves or their home available to, and fully cooperated with the Defendant and its representative and agent to inspect and investigate the damages caused by the storm.

3

Copy from re:SearchGA

12.

Defendant, through its authorized representative and agent, Waller, performed a site inspection of Plaintiffs' home.

13.

Defendant's authorized representative and agent, Waller, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiffs' claim when he undertook the handling of the disposition of the claim.

14.

Defendant, through its authorized representative and agent, Williams, grossly underestimated the scope of damages sustained to the Plaintiffs' property as a result of the wind and hail event. Defendant failed to properly investigate the damages and estimated Plaintiffs' total property damage to be $24,740.66. Plaintiffs' deductible is $3,449.00 per occurrence; thus, after the deductible and depreciation Plaintiffs were due $19,412.62 for the damage to their property. A true and accurate copy of the Defendant's estimate is attached hereto as Exhibit "B."

15.

As a result of Defendant's gross underestimation, Plaintiffs requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiffs' requests and continued to frivolously and baselessly deny any additional payment on Plaintiffs' claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiffs' experts as to the amount of damage and the amount it will cost the Plaintiffs in order to be placed in the same position they were in prior to the storm.

4

Copy from re:SearchGA

16.

Plaintiffs made repeated requests for payment of the claim, including written demand sent to Defendant on January 4, 2021.  A true and accurate copy of the written demand is attached hereto as Exhibit "C."  Despite this demand for **$71,445.79 less all previous payments**, Defendant has continued to frivolously deny Plaintiffs' claim without just cause when the obligation to settle the claim has become reasonably clear, under one or more portions of the insurance policy coverage.

17.

The Plaintiffs' January 4, 2021, correspondence (Exhibit "C") to Defendant was a formal 60-Day demand, pursuant to O.C.G.A. §33-4-6 guidelines.  After putting Defendant on notice of a potential lawsuit, through the formal 60-Day demand, the Defendant continued to frivolously and baselessly deny Plaintiffs' claim without just cause.

18.

Defendant did not act fairly and honestly toward the Plaintiffs with due regard to the Plaintiffs' claim when the Defendant failed to compensate the Plaintiffs for their damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiffs, and with due regard for their interests.

19.

Plaintiffs have fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

Copy from re:SearchGA

20.

There exists a genuine, justifiable controversy between the Plaintiffs and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiffs' home caused by the severe storm that occurred on October 29, 2020.  Plaintiffs have exhausted every reasonable means possible to resolve this dispute with the Defendant.  With no other option, Plaintiffs were constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

21.

Plaintiffs have suffered physical damage to their home in an amount to be determined at trial.

## **COUNT I: BREACH OF CONTRACT**

22.

Plaintiffs adopt, re-allege, and incorporate their allegations set forth in Paragraphs 1-21 of this Complaint as if fully set forth herein.

23.

Plaintiffs have performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

24.

Defendant is required to compensate the Plaintiffs for all direct physical losses under the terms of the Policy.

6

Copy from re:SearchGA

25.

Despite Plaintiffs' timely written demand that Defendant pay the covered losses, Defendant has frivolously and baselessly failed, and refused to pay Plaintiffs' claim under the terms of the Policy, causing further delay in restoring Plaintiffs' property to its pre-loss condition.

26.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiffs' claim according to the terms of the Policy.

27.

 Defendant has used the tactic of denying compensation to the Plaintiffs for their covered losses that were sustained due to the wind and hail storm.  Further, Defendant has used the tactic of delaying payment to the Plaintiffs in an effort to misrepresent the language of the Policy.

28.

As a result of the Defendant's tactic of denying and delaying Plaintiffs' claim, the Plaintiffs have sustained covered losses from direct physical damage to the insured property in an amount to be determined at trial.  In addition, Plaintiffs have further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

29.

As a direct result of Defendant's breaches of its respective insurance contract, Plaintiffs have been damaged and continues to suffer significant damages.

30.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiffs.

Copy from re:SearchGA

31.

**WHEREFORE,** Plaintiffs pray for this Court to enter an award, in Plaintiffs' favor, of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH

32.

Plaintiffs adopt, reallege, and incorporate their allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and faith dealing to achieve a proper disposition of the Plaintiffs' claim.

34.

Defendant has not attempted in good faith to settle the Plaintiffs' claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiffs and with due regard for their interests, namely, but not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue.  See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies.  See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies.  See O.C.G.A. § 33-6-34(3);

8

Copy from re:SearchGA

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear.  <u>See</u> O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.  <u>See</u> O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation.  <u>See</u> O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims.  <u>See</u> O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action.  In the case of claims denials, such denials shall be in writing.  <u>See</u> O.C.G.A. § 33-6-34(10).

35.

The above and foregoing actions of Defendant give rise to a cause of action for bad faith as the Defendant has frivolously and without a reasonable basis refused to pay Plaintiffs' covered loss within sixty (60) days after Plaintiffs' timely written demand (Exhibit "C") for payment according to O.C.G.A § 33-4-6.

36.

Defendant has frivolously and without a reasonable basis used the tactic of denying compensation to the Plaintiffs for their covered loss that was sustained due to the wind and hail

9

Copy from re:SearchGA

storm.  Further, Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to pay the Plaintiffs in an effort to misrepresent the language of the Policy.

37.

Defendant's refusal to pay Plaintiffs' covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

38.

Defendant's breach of the Policy it sold to the Plaintiffs is in bad faith, and, pursuant to O.C.G.A. § 33-4-6, Defendant is obligated in bad faith, and, as such, Plaintiffs are entitled to all damages, whether foreseeable or not, that are a direct result of Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and Plaintiffs' consultant and expert fees.

39.

Pursuant to O.C.G.A. § 33-4-6, Defendant is obligated to pay any amounts owed to the Plaintiffs within sixty (60) days of receipt of formal demand and have failed to do so.  As a result of that frivolous failure – which was arbitrary, capricious, and without a reasonable basis – Defendant is liable for all amounts due under its respective policy plus fifty percent (50%), pursuant to O.C.G.A. § 33-4-6.

40.

Pursuant to O.C.G.A. § 33-6-34, Defendant owed Plaintiffs a duty of good faith and fair dealing and had an affirmative duty to adjust Plaintiffs' claim fairly and promptly and to make a reasonable effort to settle claims with the insured when, under all the circumstances it could and should have done so had it acted fairly and honestly.  Because Defendant has breached these duties,

10

Copy from re:SearchGA

it is liable to Plaintiffs for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

41.

Pursuant to O.C.G.A. § 33-6-34, Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to pay the Plaintiffs when it refused to conduct a reasonable investigation of Plaintiffs' claim.  Moreover, such failure was arbitrary, capricious, and without probable cause.

42.

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer."  Plaintiffs are entitled, in addition to their covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, under O.C.G.A. § 33-4-6 for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiffs' loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## COUNT III: ATTORNEY'S FEES

43.

Plaintiffs adopt, reallege, and incorporate their allegations set forth in Paragraphs 1-42 of this Complaint as if fully set forth herein.

11

Copy from re:SearchGA

44.

Defendant has acted in bad faith, and has been stubbornly and maliciously litigious and has caused Plaintiffs unnecessary trouble and expense.

45.

Under the circumstances, Defendant is liable to Plaintiffs for all of Plaintiffs' costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14, O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

46.

Plaintiffs request a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

47.

**WHEREFORE**, Plaintiffs request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiffs receive any and all damages at law to which they are justly entitled, and thus pray for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiffs and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiffs by the Defendant and any resulting expenses and temporary repairs.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiffs' claim without a reasonable basis;

12

Copy from re:SearchGA

d.  Plaintiffs' attorneys' fees and costs of suit in this action;

e.  Plaintiffs' consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds

in law or equity.

Dated, this the 30th day of March, 2 0 2 1.

RESPECTFULLY SUBMITTED,

For THE HUGGINS LAW FIRM, LLC

By: _____
J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
Attorneys for the Plaintiffs
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

13

Copy from re:SearchGA

# EXHIBIT A

Copy from re:SearchGA

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

PO Box 88049
Atlanta GA 30356-9901



AT2       H-27-2435-FB93  F H W
      006384    3200
FISHEL-BROWN, STEPHANIE &
BENJAMIN
602 BENTLEY FALLS CT
CANTON GA  30114-6839

ST-
0105-0000

# RENEWAL DECLARATIONS

| AMOUNT DUE: | None |
|---|---|

**Payment is due by  TO BE PAID BY MORTGAGEE**

**Policy Number:**    11-EP-Y526-4

**Policy Period:**   12 Months
**Effective Dates:** JUN 29 2020 to JUN 29 2021
The policy period begins and ends at 12:01 am standard time at the residence premises.

## Homeowners Policy

**Location of Residence Premises**

602 BENTLEY FALLS CT
CANTON GA  30114-6839

**Your State Farm Agent**
LINDSAY MULLEN
2250 N DRUID RD NE STE 145
ATLANTA GA        30329-3118

**Phone:** (404) 728-1000

| **Construction:** | Masonry Veneer | **Roof Material:**  Wood Shake/Shingle |
|---|---|---|
| **Year Built:** | 1995 | **Roof Installation Year:**   2000 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES

NOTICE: Information concerning changes in your policy language is included.  Please call your agent with any questions. Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

## PREMIUM

| Annual Premium | $1,737.00 |
|---|---|

*Your premium has already been adjusted by the following:*
    Home/Auto Discount              Claim Record Discount

| **Total Premium** | **$1,737.00** |
|---|---|

Prepared   MAY 05 2020

HO-2000
035778   420
N     GB,DR,6T,R7,G5

*Thanks for letting us serve you.  We appreciate our long term customers.*

(o1F1080B)  04-04-2016

Copy from re:SearchGA



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| FISHEL-BROWN, STEPHANIE & BENJAMIN | **Mortgagee**<br>NATIONSTAR MORTGAGE LLC ISAOA    Loan Number:<br>DBA MR COOPER                         0638317859<br>PO BOX 7729<br>SPRINGFIELD OH  45501-7729 |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $      689,900 |
| Other Structures | $        68,990 |
| B Personal Property | $      517,425 |
| C Loss of Use | $      206,970 |
| Fungus (including Mold) Limited Coverage | $        10,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $      300,000 |
| Damage to the Property of Others | $          1,000 |
| M Medical Payments to Others (Each Person) | $          1,000 |

## INFLATION

Inflation Coverage Index: 259.5

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses  1/2% | $          3,449 |

## LOSS SETTLEMENT PROVISIONS

A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

MAY 05 2020

 o F 1081A

HO-2000

Page  2 of  4

Copy from re:SearchGA

**11-EP-Y526-4**

**State Farm**

## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| HW-2111 | Homeowners Policy |
| Option ID | Increase Dwlg up to $137,980 |
| Option OL | Ordinance/Law   10%   $68,990 |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| HO-2465 | Fungus (Incl Mold) Liability |
| HO-2584 | Fungus (Incl Mold) Limited Cov |
| HO-2444 | Back-Up Of Sewer Or Drain - |
| | 5% of Coverage A/$ 34,495 |
| HO-2231 | *Amendatory Endorsement |
| | *New Form Attached |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

Prepared   MAY 05 2020
HO-2000
035779   420
N

Copy from re:SearchGA



**Your coverage amount....**

It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home.  State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

MAY 05 2020

V1081A0

HO-2000

Copy from re:SearchGA

11-EP-Y526-4      035780

HO-2231C
Page 1 of 2

# IMPORTANT NOTICE

Effective with this policy term, **HO-2231 HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)** is added to your policy.

This notice and the Notice Of Reductions In Coverage included in this packet, summarizes the changes being made to your policy.  Please read the new endorsement carefully and note the following changes:

### OTHER CHANGES

- Within **SECTION I AND SECTION II – CONDITIONS**, the requirements regarding cancellation or non-renewal have been amended.

    o The named insured shown in the Declarations can cancel the policy at any time by giving us advance notice of the date cancellation is to take effect. We may require written, electronic, or other recorded verification of the request for cancellation before we cancel the policy.

    o If we must notify a third party about the cancellation, the effective date of the cancellation may be extended in order for us to mail or deliver notice of cancellation to you and the other party at least 10 days before the date cancellation takes effect.

    o We now state that the notice of cancellation and notice of nonrenewal will be delivered to you or mailed to the last mailing address known to us.

Endorsement **HO-2231** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## HO-2231 HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)

This endorsement modifies insurance provided under the HOMEOWNERS POLICY

DEFINITIONS

The definition of "*occurrence*" is replaced by the following:

"*occurrence*", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

SECTION I AND SECTION II – CONDITIONS

Under **Cancellation**, paragraph 5.a. and the first paragraph of 5.b. are replaced by the following:

a. *You* may cancel this policy at any time by giving *us* advance notice of the date cancellation is to take effect. *We* may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect. If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date *we* received *your* notice of cancellation; or

(2) the date specified in the notice.

If notice must be given to a governmental agency, mortgagee, or other third party, the effective date of cancellation may be extended in order for *us* to mail or deliver notice of cancellation to *you* and the other party at least 10 days before the date cancellation takes effect.

b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to the last mailing address known to *us*. Proof of mailing will be sufficient proof of notice.

Nonrenewal is replaced by the following:

**Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to the last mailing address known to *us*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy.  Proof of mailing will be sufficient proof of notice.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018

Copy from re:SearchGA

If *we* elect not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

**OPTIONAL POLICY PROVISIONS**

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under COVERAGE A – DWELLING according to the **Loss Settlement Provision** shown in the *Declarations*.

1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under **COVERAGE A – DWELLING, Other Structures** exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

All other policy provisions apply.

HO-2231

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018

Copy from re:SearchGA

11-EP-Y526-4      035781



553-4283 GA

# NOTICE OF REDUCTIONS IN COVERAGE

EFFECTIVE WITH THIS POLICY TERM, **HO-2231 HOMEOWNERS AMENDATORY ENDORSEMENT (GEORGIA)** IS ADDED TO YOUR POLICY.

THIS NOTICE AND THE **IMPORTANT NOTICE** INCLUDED IN THIS PACKET, SUMMARIZES THE CHANGES BEING MADE TO YOUR POLICY. PLEASE READ THEM THOUROUGHLY AND PLACE THEM WITH YOUR POLICY.  IF YOU HAVE ANY QUESTIONS ABOUT THE INFORMATION IN THIS NOTICE, PLEASE CONTACT YOUR STATE FARM® AGENT.

ALTHOUGH NOT INTENDED TO CHANGE COVERAGE, THIS CHANGE COULD POTENTIALLY REDUCE OR ELIMINATE COVERAGE DEPENDING ON HOW IT IS INTERPRETED AND, IN THAT REGARD, SHOULD BE VIEWED AS EITHER AN ACTUAL OR POTENTIAL REDUCTION IN OR ELIMINATION OF COVERGE.

- WITHIN **DEFINITIONS**, THE MEANING OF "OCCURRENCE" HAS BEEN AMENDED TO DIFFERENTIATE BETWEEN CONTINUOUS OR REPEATED EXPOSURE.

- WITHIN **OPTIONAL POLICY PROVISIONS, OPTION ID** HAS BEEN AMENDED.

  o IF THE AMOUNT YOU ACTUALLY AND NECESSARILY SPEND TO REPAIR OR REPLACE THE DAMAGED DWELLING EXCEEDS THE LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS FOR **COVERAGE A – DWELLING**, WE WILL PAY THE ADDITIONAL AMOUNTS NOT TO EXCEED THE OPTION ID LIMIT SHOWN IN THE DECLARATIONS.

  o IF THE AMOUNT YOU ACTUALLY AND NECESSARILY SPEND TO REPAIR OR REPLACE DAMAGED BUILDING STRUCTURES COVERED UNDER **COVERAGE A – DWELLING, OTHER STRUCTURES** EXCEEDS THE LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS FOR OTHER STRUCTUES, WE WILL PAY THE ADDITIONAL AMOUNTS NOT TO EXCEED 10% OF THE OPTION ID LIMIT SHOWN IN THE DECLARATIONS.

THIS NOTICE IS A GENERAL DESCRIPTION OF COVERAGE AND/OR COVERAGE CHANGES AND IS NOT A STATEMENT OF CONTRACT.  THIS MESSAGE DOES NOT CHANGE, MODIFY, OR INVALIDATE ANY OF THE PROVISIONS, TERMS, OR CONDITIONS OF YOUR POLICY, OR ANY OTHER APPLICABLE ENDORSEMENTS.

553-4283 GA

553-2798

# IMPORTANT NOTICE . . . Discounts and Rating

The longer you are insured with State Farm® and the fewer claims you have, the lower your premium.  For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for the Plan in the most recent three-year period since becoming insured with State Farm.  Premium adjustments under the Claim Record Rating Plan are based on the number of years you have been insured with State Farm and on the number of claims that we consider for the Plan.  Depending on the Plan(s) that applies in your state/province, claims considered for the Plans generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium.  For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for the Plans, please contact your State Farm agent.

553-2798 (C)        (10/07)

(CONTINUED)

Copy from re:SearchGA

553-2634.1

## PREMIUM DISCOUNT AVAILABLE FOR USE OF IMPACT-RESISTIVE ROOFING PRODUCTS

State Farm® offers a premium discount for homes that have qualified impact-resistive roofing materials.

Underwriters Laboratories (UL) and Factory Mutual (FM) are nationally recognized testing laboratories that develop safety standards and test products to verify they meet specific performance standards. Both UL and FM have developed testing standards that measure the impact resistance of various roofing materials. The roofing products tested by UL and FM are rated from Class 1 to Class 4, with Class 4 providing the greatest roofing protection.

State Farm offers a premium discount when qualified UL certified or FM approved Class 3 or Class 4 roofing materials have been installed *on your home*. The discount applies to both new and replacement roofs installed since May 1996 with UL certified products, and since July 2005 with FM approved products.

Discounts are not available for wood roofs, or roofs (other than qualifying metal roofs) that have been overlaid on to existing roofing. Discounts are also subject to limitations and may not be available on all UL or FM Class 3 and 4 impact-resistant roofing products.

Manufacturers continue to bring UL certified and FM approved roofing products to the consumer marketplace. You can visit our web site at http://www.statefarm.com/insurance/other/roofinfo.asp for a list of qualifying products in your state.

If you have any questions about the discounts available for installing an impact-resistive roof or to see if your roof qualifies, please contact your State Farm agent.

**This discount program does not constitute an endorsement or any warranty of performance on the part of State Farm for any particular roofing product. Please research and determine what roofing material is best suited for your home, location and environmental conditions.**

553-2634.1 (C)                    (12/09)

553-3665 GA

## Information About Your Premium

Claims and information from other State Farm® policies in your household may have been used to determine the premium shown. A policy may be considered "in your household" if, according to our records, the policy has a name and address in common with this policy.

Consumer reports may also be used to determine the price you are charged. We may obtain and use a credit-based insurance score developed from information contained in these reports. We may use a third party in connection with the development of your insurance score.

If a credit-based insurance score is used, you have the right to request, no more than once in a 12 month period that your policy be re-rated. The resulting impact due to the credit portion of the re-rated insurance score will not increase your premium; however, your overall premium may decrease, remain the same, or increase due to other factors impacting your total premium.

We occasionally collect personal information from persons other than the individual or individuals listed on the policy. Such personal information may, in certain circumstances, be disclosed to third parties without your authorization. If you would like additional information concerning the collection and disclosure of your personal information – and your right to see and correct any personal information in your files – it will be furnished upon request.

553-3665 GA (C)

(CONTINUED)

Copy from re:SearchGA

**11-EP-Y526-4**     **035782**

553-4157

# NOTICE TO POLICYHOLDER



For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

**553-4157 (C)**

ST-
0505-0000

Copy from re:SearchGA

Copy from re:SearchGA

HO-2465
Page 1 of 1

## HO-2465 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT ($50,000)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

Except for the coverage provided by this endorsement, the policy to which this endorsement is attached does not apply to any claim or suit for damages because of **bodily injury** or **property damage** arising out of or resulting from **fungus**.

### SECTION II – LIABILITY COVERAGES

**COVERAGE L – PERSONAL LIABILITY** is amended to include the following:

**We** will pay up to **our** limit of liability all sums that the **insured** is legally obligated to pay as damages because of **bodily injury** or **property damage** arising out of or resulting from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location.

However, **we** do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of **fungus**; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of **fungus**.

### LIMIT OF LIABILITY

Regardless of the number of **insureds** under this coverage or number of claims made or suits brought, the most **we** will pay under this coverage for all claims for damages in any one **occurrence** is $50,000. This limit is also the most **we** will pay for the sum of all claims arising from all **occurrences** during each policy period.

All other policy provisions apply.

HO-2465

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

Copy from re:SearchGA

## HO-2584 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

**SECTION I – LOSSES NOT INSURED** 2.g., **Fungus** (**SECTION I – LOSSES NOT INSURED** 1.g. if **you** have a RENTERS POLICY), does not apply to the extent coverage is provided by this endorsement.

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Remediation of Fungus.**

a. If **fungus** is the result of a **loss insured** other than fire or lightning, **we** will pay for:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair, or replacement of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove the **fungus** from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the **building structure** or other property as needed to gain access to the **fungus**; or

(c) contain, treat, detoxify, neutralize, or dispose of or in any way respond to or assess the effects of the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of **fungus**, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

b. **We** do not cover **fungus** that is the result of:

(1) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(a) and is:

i. continuous;

ii. repeating;

iii. gradual;

iv. intermittent;

v. slow; or

vi. trickling; and

(b) from a:

i. heating, air conditioning, or automatic fire protective sprinkler system;

ii. household appliance; or

iii. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

**We** also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item b. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the **insured**.

(2) defect, weakness, inadequacy, fault, or unsoundness in:

(a) planning, zoning, development, surveying, or siting;

(b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(c) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(d) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**.

c. This coverage applies only if:

(1) **we** receive immediate notice of the occurrence of the **loss insured** that is alleged to have resulted in **fungus**, and remediation begins as soon as possible; and

(2) all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence of the **loss insured**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

Copy from re:SearchGA

d. The most *we* will pay for this coverage, in any one policy period, is the limit of insurance shown on the *Declarations* for this endorsement. This limit applies only to *fungus* resulting from a *loss insured* other than fire or lightning regardless of:

(1) the number of *losses insured* that combine or contribute to the presence of resulting *fungus*; or

(2) the number of claims made during the policy period.

This limit includes any payments for **SECTION I – ADDITIONAL COVERAGES** and **COVERAGE C – LOSS OF USE**. Any payments made for this coverage are part of and not in addition to the limit of insurance that applies to covered property.

All other policy provisions apply.

HO-2584

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

## HO-2231 HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)

This endorsement modifies insurance provided under the HOMEOWNERS POLICY

### DEFINITIONS

The definition of "**occurrence**" is replaced by the following:

"**occurrence**", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one **occurrence**.

### SECTION I AND SECTION II – CONDITIONS

Under **Cancellation**, paragraph 5.a. and the first paragraph of 5.b. are replaced by the following:

a. **You** may cancel this policy at any time by giving **us** advance notice of the date cancellation is to take effect. **We** may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect.

If only **your** interest is affected, the effective date of cancellation will be the later of:

(1) the date **we** received **your** notice of cancellation; or

(2) the date specified in the notice.

If notice must be given to a governmental agency, mortgagee, or other third party, the effective date of cancellation may be extended in order for **us** to mail or deliver notice of cancellation to **you** and the other party at least 10 days before the date cancellation takes effect.

b. **We** may cancel this policy only for the reasons stated in this condition. **We** will notify **you** in writing of the date cancellation takes effect. This cancellation notice may be delivered to **you**, or mailed to the last mailing address known to **us**. Proof of mailing will be sufficient proof of notice:

**Nonrenewal** is replaced by the following:

**Nonrenewal.** **We** may elect not to renew this policy. If **we** elect not to renew, a written notice will be delivered to **you**, or mailed to the last mailing address known to **us**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

If **we** elect not to renew this policy, **we** will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

### OPTIONAL POLICY PROVISIONS

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** **We** will settle losses to damaged **building structures** covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the **Declarations**.

1. If the amount **you** actually and necessarily spend to repair or replace the damaged **dwelling** exceeds the limit of liability shown in the **Declarations** for Coverage A – Dwelling, **we** will pay the additional amounts not to exceed the Option ID limit shown in the **Declarations**.

2. If the amount **you** actually and necessarily spend to repair or replace damaged **building structures** covered under **COVERAGE A – DWELLING, Other Structures** exceeds the limit of liability shown in the **Declarations** for Other Structures, **we** will pay the additional amounts not to exceed 10% of the Option ID limit shown in the **Declarations**.

**Report Increased Values.** **You** must notify **us** within 90 days of the start of construction on any new **building structure** costing $5,000 or more; or any additions to or remodeling of **building structures** that increase their values by $5,000 or more. **You** must pay any additional premium due for the increased value. **We** will not pay more than the applicable limit of liability shown in the **Declarations** if **you** fail to notify **us** of the increased value within 90 days.

All other policy provisions apply.

HO-2231

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018

Copy from re:SearchGA

# HO-2444 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES**:

**Back-up of Sewer or Drain.** *We* will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

   (1) from outside the *residence premises* plumbing system that enters through a sewer or drain located inside the interior of the *dwelling*; or

   (2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

   (1) losses resulting from *your* failure to:

     (a) keep a sump pump or its related equipment in proper working condition; or

     (b) perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

   (2) losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

     (a) this endorsement is attached to a newly issued policy; or

     (b) this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c. If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d. The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the **COVERAGE A – DWELLING** limit shown in the *Declarations*, as adjusted by the inflation coverage provisions of this policy. This is an additional amount of insurance.

e. The deductible for each loss under this coverage is the amount shown in the *Declarations* under **Section I Deductible** for "Other Losses" or "All Losses", whichever applies.

For purposes of this endorsement only:

a. **SECTION I – LOSSES INSURED**, item 12.b.(2) is deleted from the policy.

b. **SECTION I – LOSSES NOT INSURED**, **Water** is replaced by:

   **Water**, meaning:

   (1) flood;

   (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3) waves (including tidal wave, tsunami, and seiche);

   (4) tides or tidal water;

   (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

   (7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

   except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Back-Up of Sewer or Drain**.

   (8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED

Copy from re:SearchGA

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, **we** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a ***loss insured***.

c.   **SECTION I – CONDITIONS**, **Other Insurance** is replaced by:

    **Other Insurance.** This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

HO-2444

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

Copy from re:SearchGA



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.   However, we want to point out that every policy contains limitations and exclusions.   Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Homeowners
Policy**

**Georgia**
HW-2111

Copy from re:SearchGA

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

**AGREEMENT** ..................................................1

**DEFINITIONS** ................................................1

**DEDUCTIBLE** ................................................5

**SECTION I – PROPERTY COVERAGES** ...............5

   **COVERAGE A – DWELLING**......................5

      Dwelling ..............................................5

      Other Structures ................................5

      Property Not Covered.........................5

   **COVERAGE B – PERSONAL PROPERTY** .....5

      Property Covered ...............................5

      Special Limits of Liability ...................6

      Property Not Covered.........................6

   **COVERAGE C – LOSS OF USE**...................8

      Additional Living Expense ..................8

      Fair Rental Value................................8

      Prohibited Use ...................................8

   **SECTION I – ADDITIONAL COVERAGES**........8

      Debris Removal..................................8

      Temporary Repairs............................9

      Trees, Shrubs, and Landscaping .......9

      Fire Department Service Charge.........9

      Property Removed .............................9

      Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money........9

      Power Interruption ...........................10

      Refrigerated Products ......................10

      Arson Reward...................................10

      Volcanic Action ................................10

      Collapse ...........................................10

      Locks and Remote Devices...............11

      Fuel Oil Release ...............................11

      Tear Out ...........................................11

      Home Certification............................11

**INFLATION COVERAGE** .........................................11

**SECTION I – LOSSES INSURED** .................................12

   **COVERAGE A – DWELLING**.........................12

   **COVERAGE B – PERSONAL PROPERTY** ...........12

**SECTION I – LOSSES NOT INSURED** .......................14

**SECTION I – LOSS SETTLEMENT** ............................18

   **COVERAGE A – DWELLING**.........................18

      A1 – Replacement Cost Loss Settlement – Similar Construction ..........................18

      A2 – Replacement Cost Loss Settlement – Common Construction....................19

   **COVERAGE B – PERSONAL PROPERTY** ...........19

      B1 – Limited Replacement Cost Loss Settlement ......................................19

      B2 – Depreciated Loss Settlement .................20

**SECTION I – CONDITIONS** ....................................20

      Insurable Interest and Limit of Liability .............20

      Your Duties After Loss .....................20

      Loss to a Pair or Set ........................21

      Appraisal...........................................21

      Other Insurance................................22

      Suit Against Us .................................22

      Our Option ........................................22

      Loss Payment ..................................22

      Abandonment of Property.................22

      Mortgagee Clause............................22

      No Benefit to Bailee..........................23

      Recovered Property..........................23

      Assignment of Claim........................23

**SECTION II – LIABILITY COVERAGES** ......................23

   **COVERAGE L – PERSONAL LIABILITY** ..............23

   **COVERAGE M – MEDICAL PAYMENTS TO OTHERS** ..................................................23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

**SECTION II – ADDITIONAL COVERAGES**............24
    Claim Expenses ..........................................24
    First Aid Expenses .....................................24
    Damage to Property of Others ....................24
**SECTION II – EXCLUSIONS**..........................25
**SECTION II – CONDITIONS**...........................28
    Limit of Liability..........................................28
    Severability of Insurance ...........................28
    Duties After Loss .......................................28
    Coverage M Requirements .........................29
    Payment of Claim – Coverage M or Damage
    to Property of Others ..................................29
    Suit Against Us...........................................29
    Bankruptcy of an Insured ...........................29
    Other Insurance – Coverage L ....................29
**SECTION I AND SECTION II – CONDITIONS**...........29
    Policy Period .............................................29
    Concealment or Fraud................................29
    Liberalization Clause .................................30
    Waiver or Change of Policy Provisions ...........30
    Cancellation...............................................30
    Nonrenewal ...............................................30
    Assignment of Policy .................................31

    Subrogation and Reimbursement....................31
    Death .......................................................31
    Conformity to State Law .............................31
    Premium ...................................................31
    Right to Inspect.........................................32
    Joint and Individual Interests .....................32
    Change of Policy Address ...............................32
    Electronic Delivery.....................................32
    Our Rights Regarding Claim Information..........32
    Duties Regarding Claim Information...............33
**OPTIONAL POLICY PROVISIONS**.........................33
    Option AI – Additional Insured.........................33
    Option BP – Business Property ......................33
    Option BU – Business Pursuits ......................33
    Option FA – Firearms ..................................34
    Option ID – Increased Dwelling Limit ............34
    Option IO – Incidental Business .....................35
    Option JF – Jewelry and Furs.........................35
    Option OL – Building Ordinance or Law ...........36
    Option SG – Silverware and Goldwar7
    Theft .......................................................37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

# HOMEOWNERS POLICY

## AGREEMENT

*We* agree to provide the insurance described in this policy:

1.  based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2.  based on *your* compliance with all applicable provisions of this policy; and

3.  based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1.  *you* will pay premiums when due and comply with the provisions of this policy;

2.  the statements in this agreement are *your* statements and are true;

3.  *we* insure *you* on the basis *your* statements are true; and

4.  this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1.  **"actual cash value"** means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

    a.  materials, including any tax;

    b.  labor, including any tax; and

    c.  overhead and profit;

    are subject to depreciation.

    The depreciation deduction may include such considerations as:

    a.  age;

    b.  condition;

    c.  reduction in useful life;

    d.  obsolescence; and

    e.  any pre-loss damage including wear, tear, or deterioration;

of the damaged part of the property.

2.  **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

    *Bodily injury* does not include:

    a.  any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

    b.  the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

    c.  emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3.  **"building structure"** means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

1

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

A **building structure** includes:

a. the foundation supporting the structure, including:

    (1) slabs;

    (2) basement walls;

    (3) crawl space walls;

    (4) footings; and

    (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. **"business"** means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an **insured's** principal means of livelihood. Profit and profit motive are irrelevant.

**Business** does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the **insured**;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of

the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss; or

e. ownership of the **residence premises** by the person or organization shown in the **Declarations** as Additional Insured.

5. **"Declarations"** means the policy **Declarations**, any amended **Declarations**, the most recent renewal **Declarations**, an Evidence of Insurance form, or any endorsement changing any of these.

6. **"diminution in value"** means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. **"dwelling"** means the **building structure** on the **residence premises** used as the primary private residence and includes structures attached to the **dwelling**.

8. **"fungus"** means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. **"insured"** means:

a. **you**;

b. **your relatives**; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, **insured** also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by **you** or a person included in 9.b. or 9.c. above.  A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

e. with respect to any vehicle to which this policy applies, any person while engaged in **your** employment or the employment of a person included in 9.b. or 9.c. above.

10. **"insured location"** means:

a. the **residence premises**;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

b.  the part of any other premises, other structures, and grounds used by **you** as a residence. This includes premises, structures, and grounds **you** acquire while this policy is in effect for **your** use as a residence;

c.  any premises used by **you** in connection with the premises included in 10.a. or 10.b. above;

d.  any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e.  land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f.  individual or family cemetery plots or burial vaults owned by an **insured**;

g.  any part of a premises occasionally rented to an **insured** for purposes other than **business**;

h.  vacant land owned by or rented to an **insured**. For the purposes of this definition, vacant land does not include:

    (1) farm land;

    (2) land containing a residence; or

    (3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the **insured**; or

i.  farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. **"loss insured"** means a loss as described under **SECTION I – LOSSES INSURED**, **COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

12. **"motor vehicle"**, when used in Section II of this policy, means:

a.  a land **motor vehicle** designed for travel on public roads or subject to motor vehicle registration;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c.  a "recreational or utility vehicle" while off an **insured location**. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d.  a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

e.  a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

f.  any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not **motor vehicles**:

a.  a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b.  a motorized land vehicle in storage on an **insured location** not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c.  a motorized golf cart while used for golfing purposes;

d.  a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14. *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15. *"relative"* means any person related to *you* by:

a. blood;

b. adoption;

c. marriage; or

d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16. *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17. *"residence premises"* means:

a. the one, two, three, or four family dwelling, other structures and grounds; or

b. that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18. *"State Farm Companies"* means one or more of the following:

a. State Farm Mutual Automobile Insurance Company;

b. State Farm Fire and Casualty Company; and

c. subsidiaries or affiliates of either 18.a. or 18.b. above.

19. *"vacant dwelling"* means:

a. a dwelling:

(1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b. A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1) being built as a new structure;

(2) being repaired due to damage otherwise covered by this policy; or

(3) undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21. *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a. a spouse of a "Named Insured";

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the ***Declarations***.  Deductibles will be applied per occurrence.  Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling.**  *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2. **Other Structures.**  *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space.  Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

   *We* do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

      (1) duties of the *insured's* employment by another; and

      (2) performed solely by the *insured*; or

   c. rented or held for rental unless:

      (1) rented to a person who is a tenant of the *dwelling;*

      (2) rented for use solely as a private garage; or

      (3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3. **Property Not Covered.**  *We* do not cover:

   a. land, including the land necessary to support any Coverage A property.  *We* also do not cover:

      (1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

      (2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

   b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

   c. systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

   a. *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

      (1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

      (2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

b. *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound,

and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered.** *We* do not cover:

a. articles separately described and specifically insured in this or any other insurance;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k.  However, *we* do cover those vehicles or machines:

    (1) that are:

        (a) not designed for travel on public roads; and

        (b) not subject to motor vehicle registration;

    (2) and that are:

        (a) used primarily to service the *insured location*; or

        (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system.  *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts.  This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to *you*;

g. property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

    (1) in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

    (2) on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the *residence premises*;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records.  This does not apply to any recording or storage media for electronic data processing.  *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy

if the damage had occurred to property on the *residence premises*;

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

*We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**.

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

    (a) the driveway, on the *residence premises,* and prevents land *motor vehicle* access to or from the *dwelling*; or

    (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

    a. trees, shrubs, live or artificial plants, and lawns;

    b. artificial grass; and

    c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning**, **Explosion**, **Riot or civil commotion**, **Aircraft**, **Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property

for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

    a. *We* will pay up to $1,000 for:

      (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

      (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

*We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

    b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

    c. Defense:

      (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

      (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

      (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

9

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized.  This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.**  Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure.  If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a.  removal of a plug from an electrical outlet; or

   b.  turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.**  *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy.  This coverage may increase the limit otherwise applicable.  However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.**  *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a.  airborne volcanic shock waves;

    b.  ash, dust, or particulate matter; or

    c.  lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.**  *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

    a.  Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*.  Collapse does not include any of the following:

        (1)  settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

        (2)  substantial structural impairment;

        (3)  imminent or threatened collapse;

        (4)  a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

        (5)  a part of a *building structure* that is standing even if:

            (a)  it has separated from another part of the *building structure*; or

            (b)  it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b.  The collapse must be directly and immediately caused by one or more of the following:

        (1)  perils described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**.  These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

        (2)  decay or deterioration of, or damage from animals, birds, or insects to:

            (a)  a connector; or

            (b)  a structural member of a *building structure*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

To find the limits on a given date:

1.  divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2.  multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy.  However, loss does not include and *we* will not pay for, any *diminution in value*.

1.  **Fire or lightning.**

2.  **Windstorm or hail.**  This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust.  This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft**, including self-propelled missiles and spacecraft.

6.  **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

    a.  This includes:

        (1) the impact of a vehicle;

        (2) an object propelled from the tire or body of a vehicle;

        (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

        (4) a vehicle door or trunk lid being closed on personal property.

    b.  This peril does not include loss:

        (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

        (2) caused by shifting of the load being carried in or on a vehicle; or

        (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7.  **Smoke**, meaning abrupt and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8.  **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9.  **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

    This peril does not include:

    a.  loss of a precious or semi-precious stone from its setting;

    b.  loss caused by theft:

12

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

(1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from the **residence premises**, if the theft is committed by a person who is not an **insured**;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the **residence premises** is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

    (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from the **residence premises**;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

    (1) condensation or the presence of humidity, moisture, or vapor; or

    (2) seepage or leakage of water, steam, or sewage that is:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

Copy from re:SearchGA

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless *you* have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless *you* have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. *We* will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. *We* will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if *you* have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective system, *you* must use reasonable care to continue the water supply and maintain heat in the

14

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

*building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

  (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

  (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

  (1) and is:

    (a) continuous;

    (b) repeating;

    (c) gradual;

    (d) intermittent;

    (e) slow; or

    (f) trickling; and

  (2) from a:

    (a) heating, air conditioning, or automatic fire protective sprinkler system;

    (b) household appliance; or

    (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

  (1) Contaminants and pollutants include but are not limited to any:

    (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

    (b) contaminants or pollutants resulting from any natural resource extraction activities; or

    (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Fuel Oil Release**.

  (2) *We* also will not pay for:

    (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

    (b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

    (1) This includes:

      (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

      (b) costs to remove animals, birds, or insects from the covered property; and

      (c) costs to prevent the animals, birds, or insects from returning to the property;

    (2) However, *we* will pay for:

      (a) losses caused by wild bears or deer; and

      (b) the breakage of glass or safety glazing material that is a part of a ***building structure***, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a ***building structure*** or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

    (1) earthquake;

    (2) landslide, mudslide, or mudflow;

    (3) sinkhole or subsidence;

    (4) movement resulting from:

      (a) improper compaction;

      (b) site selection;

      (c) natural resource extraction activities; or

      (d) excavation;

    (5) erosion;

    (6) pressure by surface or subsurface earth or fill; or

    (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, *we* will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a ***loss insured***.

c. **Water**, meaning:

    (1) flood;

    (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

    (3) waves (including tidal wave, tsunami, and seiche);

    (4) tides or tidal water;

    (5) overflow of any body of water (including any release, escape, or rising of any body

16

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, **we** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a **loss insured**.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be

considered loss caused by fire, explosion, or smoke.

However, **we** will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a **loss insured**.

g. **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair, or replacement of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove the **fungus** from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the **building structure** or other property as needed to gain access to the **fungus**; or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of **fungus**, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if **fungus** results from an accidental direct physical loss caused by fire or lightning.

h. **Intentional Losses.** If any **insured** intentionally causes or procures a loss to property covered under this policy, **we** will not pay any **insured** for this loss. This applies regardless of whether the **insured** is charged with or convicted of a crime.

17

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

This does not apply to:

(1) an *insured* who did not participate in, co-operate in, or contribute to causing or procuring the loss; or

(2) a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

    (a) arises out of family violence against an innocent *insured*; and

    (b) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

    a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

    b. defect, weakness, inadequacy, fault, or unsoundness in:

      (1) planning, zoning, development, surveying, or siting;

      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

      (3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

      (4) maintenance;

    of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

    c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE A – DWELLING**

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

    a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

      (4) *we* will not pay for increased costs resulting from enforcement of any ordinance or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

law regulating the construction, repair, or demolition of a **building structure** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b. Wood Fences:  **We** will pay the **actual cash value** for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A – Other Structures**.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. **We** will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) **we** will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. **We** will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, **you** must complete the actual repair or replacement of the damaged part of the property within

two years after the date of loss, and notify **us** within 30 days after the work has been completed; and

(5) **we** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b. Wood Fences: **We** will pay the **actual cash value** for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A – Other Structures**.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. **We** will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged property;

(2) after repair or replacement is completed, **we** will pay the difference between the **actual cash value** and the cost **you** have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, **we** will pay only the **actual cash value**.

b. **We** will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

However, **we** will not pay an amount exceeding the smallest of the following for items a. and b. above:

    (1)  **our** cost to replace at the time of loss;

    (2)  the full cost of repair;

    (3)  any special limit of liability described in this policy; or

    (4)  any applicable Coverage B limit of liability.

2.  **B2 – Depreciated Loss Settlement.**

    a.  **We** will pay the **actual cash value** for property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

    b.  **We** will pay market value at the time of loss for:

    (1)  antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

    (2)  articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

    (3)  property not useful for its intended purpose.

However, **we** will not pay an amount exceeding the smallest of the following for items a. and b. above:

    (1)  **our** cost to replace at the time of loss;

    (2)  the full cost of repair;

    (3)  any special limit of liability described in this policy; or

    (4)  any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

    a.  to the **insured** for an amount greater than the **insured's** interest; or

    b.  for more than the applicable limit of liability.

2.  **Your Duties After Loss.** After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

    a.  give immediate notice to **us** or **our** agent and also notify:

    (1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

    (2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b.  protect the property from further damage or loss and also:

    (1)  make reasonable and necessary temporary repairs required to protect the property; and

    (2)  keep an accurate record of repair expenses;

    c.  prepare an inventory of damaged or stolen personal property:

    (1)  showing in detail the quantity, description, age, replacement cost, and amount of loss; and

    (2)  attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d.  as often as **we** reasonably require:

    (1)  exhibit the damaged property;

    (2)  provide **us** with any requested records and documents and allow **us** to make copies;

    (3)  while not in the presence of any other **insured**:

      (a)  give statements; and

      (b)  submit to examinations under oath; and

    (4)  produce employees, members of the **insured's** household, or others for examination under oath to the extent it is within the **insured's** power to do so; and

    e.  submit to **us**, within 60 days after the loss, **your** signed, sworn proof of loss that sets forth, to the best of **your** knowledge and belief:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

(1) the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES**, **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.**  In case of loss to a pair or set, *we* may choose to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.**  If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal.  Only *you* or *we* may demand appraisal.  A demand for appraisal must be in writing.  *You* must comply with **SECTION I – CONDITIONS**, **Your Duties After Loss** before making a demand for appraisal.  At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of

the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them.  In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

(2) the party requesting the selection described in item c.(1) must provide the other party:

(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b) a copy of the written application; and

(3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

21

HW-2111

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

   (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

   (2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

   (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

   (1) has performed services for either party with respect to the claim at issue in the appraisal; or

   (2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by **you** and **us**.

g. **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

   (1) any other questions of fact;

   (2) questions of law;

   (3) questions of coverage;

   (4) other contractual issues; or

   (5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

7. **Our Option.** **We** may repair or replace any part of the property damaged or stolen with similar property. Any property **we** pay for or replace becomes **our** property.

8. **Loss Payment.** **We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss and:

a. reach agreement with **you**;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with **us**.

9. **Abandonment of Property.** **We** need not accept any property abandoned by an **insured**.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

b. If *we* deny *your* claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

(1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

a. arises out of a condition on the *insured location* or the ways immediately adjoining;

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

b. is caused by the activities of an *insured*;

c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend.  Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit.  *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request.  This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury*

covered under this policy.  *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy.  *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

# SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

    a. **bodily injury** or **property damage** that:

    (1) was a result of a:

    (a) willful and malicious; or

    (b) criminal;

    act or omission of the **insured**;

    (2) was intended by the **insured**; or

    (3) would have been expected by the **insured** based on a reasonable person standard.

    However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

    Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

    (1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

    (2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

    (3) **insured** lacked the mental capacity to control his or her conduct;

    (4) **insured** was not charged with or convicted of a criminal act or omission; or

    (5) **insured** was impaired by drugs or alcohol;

    b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below.  This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

    c. **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**.  This exclusion does not apply:

    (1) to the rental of the **residence premises**:

    (a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

    (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

    (c) in part, as an office, school, studio, or private garage;

    (2) when the **dwelling** on the **residence premises** is a two, three, or four family **dwelling** and **you** occupy one part and rent the other part to others;

    (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

    (4) to activities that are ordinarily incident to non-**business** pursuits;

    d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

    e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

    f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

    (1) an aircraft.  This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

    (a) solely for recreational or hobby purposes;

    (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

25

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

26

HW-2111

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k. *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to:

(1) the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional; or

(2) an *insured* who did not knowingly participate or cooperate in the acts described in paragraph l. above;

m. *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the *insured*;

n. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

o. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers'

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. **bodily injury** or **property damage** arising out of any real property any **insured** has sold or transferred.  This includes but is not limited to **bodily injury** or **property damage** arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any **property damage** to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) **bodily injury** arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) **property damage** arising out of fire, smoke, or explosion.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.**  The Coverage L limit is shown in the **Declarations**.  This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made, or persons injured.  No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is **our** limit for all medical expenses for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.**  This insurance applies separately to each **insured**. This condition does not increase **our** limit of liability for any one **occurrence**.

3. **Duties After Loss.**  In case of an accident or **occurrence**, the **insured** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties

that apply.  **You** must cooperate with **us** in seeing that these duties are performed:

a. give written notice to **us** or **our** agent as soon as possible, which sets forth:

(1) the identity of this policy and the **insured**;

(2) reasonably available information on the time, place, and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to **us** every notice, demand, summons, or other process relating to the accident or **occurrence**;

c. at **our** request, assist in:

(1) making settlement;

28

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVER-AGES**, **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** must not, except at the **insured's** own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Coverage M Requirements.** **We** may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by **us** when and as often as **we** reasonably require; and

c. any authorizations from the injured person as **we** may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an **insured** or **us**.

6. **Suit Against Us.** No action will be brought against **us** unless there has been compliance with the policy provisions.

No one will have the right to join **us** as a party to an action against an **insured**. Further, no action with respect to Coverage L will be brought against **us** until the obligation of the **insured** has been determined by final judgment on the merits, after an actual trial or by an agreement signed by **us**; but **we** will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.**

a. This policy is void as to **you** and any other **insured** if **you** or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1) on which **we** rely and are either:

(a) material; or

(b) made with intent to deceive; or

(2) that contribute to the loss.

b. No failure of a policy condition before the loss and no breach of a promissory warranty affects **our** obligations under this policy unless such failure or breach exists at the time of loss and either:

(1) increases the risk at the time of loss; or

(2) contributes to the loss.

Item 2.b. does not apply to failure to tender payment of premium.

c. Violation of this condition by an **insured** does not apply to a claim of an innocent **insured**, to

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

the extent of the innocent **insured's** interest in the covered property, if the loss:

(1) arises out of family violence against an innocent **insured**; and

(2) is caused by an intentional act of an **insured** against whom a family violence complaint is brought.

3. **Liberalization Clause.** If **we** adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or examination does not waive any of **our** rights.

5. **Cancellation.**

a. **You** may cancel this policy at any time by giving **us** advance written notice of the date cancellation is to take effect. If only **your** interest is affected, the effective date of cancellation will be the later of:

(1) the date **we** receive **your** notice of cancellation; or

(2) the date specified in the notice.

However, upon receipt of **your** notice of cancellation, **we** may waive the requirement that the notice be in writing by confirming the date and time of cancellation to **you** in writing.

b. **We** may cancel this policy only for the reasons stated in this condition. **We** will notify **you** in writing of the date cancellation takes effect. This cancellation notice may be delivered to **you**, or mailed to **you** at **your** mailing address shown in the **Declarations**. Proof of mailing will be sufficient proof of notice:

(1) When **you** have not paid the premium, **we** may cancel at any time by notifying **you** at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to **us** or

**our** agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason. **We** may cancel by notifying **you** at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel:

(a) if there has been a material misrepresentation of fact that, if known to **us**, would have caused **us** not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

**We** may cancel this policy by notifying **you** at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, **we** may cancel for any reason at anniversary. **We** may cancel by notifying **you** at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to **us**. In such cases, **we** will refund it within a reasonable time after the date cancellation takes effect.

e. If **we** cancel this policy, **we** will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

6. **Nonrenewal. We** may elect not to renew this policy. If **we** elect not to renew, a written notice will be delivered to **you**, or mailed to **you** at **your** mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

If *we* elect not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

         If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

         If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

      Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

      (1) hold in trust for *us* the proceeds of any recovery; and

      (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. *insured* includes:

      (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the **residence premises**; and

      (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations**.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the **State Farm Companies**;

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization

31

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

of which **you** are a member, employee, subscriber, licensee, or franchisee.

   d.   **Your** purchase of this policy may allow:

      (1)  **you** to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

      (2)  the premium or price for other products or services purchased by **you**, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

**12.**  **Right to Inspect.**

   a.   **We** have the right but are not obligated to perform the following:

      (1)  make inspections and surveys of the **insured location** at any time;

      (2)  provide **you** with reports on conditions **we** find; or

      (3)  recommend changes.

      Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

   b.   **We** do not:

      (1)  make safety inspections;

      (2)  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

      (3)  warrant that conditions are safe or healthful; or

      (4)  warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to **us** and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf.

**13.**  **Joint and Individual Interests.**  When there are two or more Named Insureds, each acts for all to cancel or change this policy.

**14.**  **Change of Policy Address.**  **We** may change the Named Insured's policy address as shown in the **Declarations** and in **our** records to the most recent address provided to **us** by:

   a.   **you**; or

   b.   the United States Postal Service.

**15.**  **Electronic Delivery.**  With **your** consent, **we** may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**16.**  **Our Rights Regarding Claim Information.**

   a.   **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

   b.   Subject to 16.a. above, **we** will not be restricted in or prohibited from:

      (1)  collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

      (2)  using any of the items described in item b.(1) above; or

      (3)  retaining:

         (a)  any of the items in item b.(1) above; or

         (b)  any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A**, **Coverage B**, or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits**. **SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering, or industrial design services;

(2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

33

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

(1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned, operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, or gradual deterioration;

b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling, or explosion of firearms;

g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit.** **We** will settle losses to damaged **building structures** covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the **Declarations**.

If the amount **you** actually and necessarily spend to repair or replace damaged **building structures** exceeds the applicable limit of liability shown in the **Declarations**, **we** will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the **dwelling**; or

2. 10% of the Option ID limit of liability to repair or replace **building structures** covered under **COVERAGE A – DWELLING**, **Other Structures**.

**Report Increased Values.** **You** must notify **us** within 90 days of the start of construction on any new **building structure** costing $5,000 or more; or any additions to or remodeling of **building structures** that increase their values by $5,000 or more. **You** must pay any additional premium due for the increased value. **We** will not pay more than the applicable limit of liability shown in the **Declarations** if **you** fail to notify **us** of the increased value within 90 days.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

Copy from re:SearchGA

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental ***business*** occupancy on file with ***us***.

1. **COVERAGE A – DWELLING**, **Other Structures**, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this ***business*** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the ***Declarations***. The first limit applies to property on the ***residence premises***. The second limit applies to property while off the ***residence premises***. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability** on property used or intended for use in a ***business***.

3. Under Section II, the ***residence premises*** is not considered ***business*** property because an ***insured*** occupies a part of it as an incidental ***business***.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. ***bodily injury*** or ***property damage*** arising out of ***business*** pursuits of any ***insured***, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-***business*** pursuits or to ***business*** pursuits of an ***insured*** that are necessary or incidental to the use of the ***residence premises*** as an incidental ***business***;

5. This insurance does not apply to:

   a. ***bodily injury*** to an employee of an ***insured*** arising out of the ***residence premises*** as an incidental ***business*** other than to a ***residence employee*** while engaged in the employee's employment by an ***insured***;

   b. ***bodily injury*** to a student arising out of corporal punishment administered by or at the direction of the ***insured***;

c. liability arising out of any acts, errors, or omissions of an ***insured***, or any other person for whose acts an ***insured*** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an ***insured's*** incidental ***business*** involving data processing, computer consulting, or computer programming; or

d. any claim made or suit brought against any ***insured*** by:

   (1) any person in the care of any ***insured*** because of child care services provided by or at the direction of:

      (a) any ***insured***;

      (b) any employee of any ***insured***; or

      (c) any other person actually or apparently acting on behalf of any ***insured***; or

   (2) any person who makes a claim because of ***bodily injury*** to any person in the care of any ***insured*** because of child care services provided by or at the direction of:

      (a) any ***insured***;

      (b) any employee of any ***insured***; or

      (c) any other person actually or apparently acting on behalf of any ***insured***.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any ***insured***, or to the part-time child care services provided by any ***insured*** under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the ***Declarations***. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES**

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Copy from re:SearchGA

**INSURED**, **COVERAGE B – PERSONAL PROPERTY**, **Theft** apply to Option JF.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

2. **Damaged Portions of Building Structure.** When a **building structure** covered under **COVERAGE A – DWELLING** is damaged by a **loss insured**, **we** will pay for the increased cost to repair or rebuild the physically damaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the

requirement is in effect at the time the **loss insured** occurs.

3. **Undamaged Portions of Damaged Building Structure.** When a **building structure** covered under **COVERAGE A – DWELLING** is damaged by a **loss insured**, **we** will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the requirement is in effect at the time the **loss insured** occurs; and

   b. loss to the undamaged portion of the **building structure** caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same **loss insured**;

      (2) the enforcement requires the demolition of portions of the same **building structure** not damaged by the same **loss insured**;

      (3) the ordinance or law regulates the construction or repair of the **building structure**, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same **loss insured**; or

   c. legally required changes to the undamaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same **loss insured**;

      (2) the requirement is in effect at the time the **loss insured** occurs; and

      (3) the legally required changes are made to the undamaged portions of specific **building structure** features, systems, or components that have been physically damaged by the **loss insured**.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

a. *We* will not pay for any increased cost of construction:

   (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

   (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

   (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

b. *We* will not pay more under this coverage than the amount *you* actually spend:

   (1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

   (2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

*We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

Copy from re:SearchGA

# EXHIBIT B

Copy from re:SearchGA

FISHEL-BROWN, STEPHANIE                                                     11-12Z2-61F



**State Farm**
**P.O. Box 106169**
**Atlanta, GA  30348-6169**
**Fax: 1-844-236-3646**
**statefarmfireclaims@statefarm.com**

# Structural Damage Claim Policy

When you have a covered structural damage claim to your real property, you should know:

- We want you to receive quality repair work to restore the damages to your property.

- We will provide you with a detailed estimate of the scope of the damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.

- Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs.

- There may be building codes, ordinances, laws, or regulations that affect the repairs of your property. These items may or may not be covered by your policy. Please contact your claim representative if you have any questions regarding coverage which may be available under your policy.

- If you select a contractor whose estimate is the same as or lower than our estimate, based on the same scope of damages, we will pay based upon their estimate. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs.

- State Farm® cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.

- State Farm does not guarantee the quality of the workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.

- It is understood that the contractor is hired by you, our insured, and that they work for you - not State Farm.

If you have any questions or need additional information regarding your claim, please contact your claim representative immediately.

Date:     3/8/2021 6:15 PM                                        132214.1  06-18-2009     Page: 1

Copy from re:SearchGA

11-12Z2-61F

 **State Farm®**   **Building Estimate Summary Guide**

**This summary guide is based on a sample estimate and is provided for reference only.**
**Please refer to the estimate for specifics of your claim.**

## State Farm Insurance

| | | | |
|---|---|---|---|
| Insured: | Smith, Joe & Jane | Estimate: | 00-0000-000 |
| Property: | 1 Main Street | Claim number: | 00-0000-000 |
| | Anywhere, IL 00000-0000 | Policy Number: | 00-00-0000-0 |
| Type of Loss: | Other | Price List: | ILBL8F_MAR 13 |
| Deductible: | $1,000.00 | | Restoration/Service/ |
| | | | Remodel |
| | | | F = Factored In, |
| | | | D = Do Not Apply |

### Summary for Dwelling

| | | | |
|---|---|---|---|
| Line Item Total 1 | | | 5,953.10 |
| Material Sales Tax | @ | 10.000% x 1,520.00 | |
| Subtotal | | | 6,105.10 |
| General Contractor Overhead 2 | @ | 10.0% x 6,105.10 | 610.51 |
| General Contractor Profit | @ | 10.0% x 6,105.10 | |
| Replacement Cost Value (Including General Contractor Overhead and Profit) 3 | | | 7,326.12 |
| Less Depreciation (Including Taxes) 4 | | | (832.50) |
| Less General Contractor Overhead & Profit on Recoverable & | | | |
| Non - recoverable Depreciation | | | (166.50) |
| Less Deductible 5 | | | |
| Net Actual Cash Value Payment 6 | | | |

### Maximum Additional Amounts Available If Incurred:

| | |
|---|---|
| Total Line Item Depreciation (Including Taxes) 4 | 832.50 |
| Less Non - recoverable Depreciation (Including Taxes) 7 | |
| Subtotal | 312.50 |
| General Contractor O&P on Depreciation | 166.50 |
| Less General Contractor O&P on Non - recoverable Depreciation | |
| Subtotal | |
| Total Maximum Additional Amounts Available If Incurred 8 | |
| Total Amount of Claim If Incurred 9 | |

_____
Claim Representative

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

1. **Line Item Total –** Total value of all line items in the estimate plus possible adjustments for *labor minimums*. *Labor Minimum* is to cover a certain minimum number of hours for drive-time, set up time and applicable administrative costs and repairs.

2. **General Contractor's Overhead and Profit –** General contractor's charge for coordinating your repairs.

3. **Replacement Cost Value (RCV) –** Estimated cost to repair or replace damaged property.

4. **Depreciation –** The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

5. **Deductible –** The insurer will pay for losses, up to the policy limits, in excess of your applicable deductible.

6. **Net Actual Cash Value Payment (ACV) –** The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*.

7. **Non Recoverable Depreciation –** *Depreciation* applied to items that are not eligible for replacement cost benefits.

8. **Total Maximum Additional Amount if Incurred –** Total amount of recoverable depreciation after actual repair or replacement of the property.

9. **Total Amount of Claim if Incurred –** Total amount of the claim, including *net actual cash value payment and total maximum additional amount available if incurred.*

Copy from re:SearchGA

**State Farm**

FISHEL-BROWN, STEPHANIE                                                                 11-12Z2-61F

| | | |
|---|---|---|
| Insured: | FISHEL-BROWN, STEPHANIE | |
| Property: | 602 Bentley Falls Ct | |
| | Canton, GA 30114 | |
| Home: | 864-506-2156 | |
| Cellular: | 864-506-2156 | |
| Type of Loss: | Wind Damage | |
| Deductible: | $3,449.00 | |
| Date of Loss: | 10/29/2020 | |
| Date Inspected: | 12/15/2020 | |

Estimate:        11-12Z2-61F
Claim Number:    1112Z261F
Policy Number:   11EPY5264
Price List:      GAAT28_OCT20
                 Restoration/Service/Remodel

## Summary for Coverage A - Dwelling - 35 Windstorm and Hail

| | |
|---|---:|
| Line Item Total | 22,054.20 |
| Material Sales Tax | 212.98 |
| Subtotal | 22,267.18 |
| General Contractor Overhead | 1,236.74 |
| General Contractor Profit | 1,236.74 |
| Replacement Cost Value (Including General Contractor Overhead and Profit) | 24,740.66 |
| Less Depreciation (Including Taxes) | (1,565.86) |
| Less General Contractor Overhead & Profit on Recoverable & Non-recoverable Depreciation | (313.18) |
| Less Deductible | (3,449.00) |
| Net Actual Cash Value Payment | $19,412.62 |

## Maximum Additional Amounts Available If Incurred:

| | | |
|---|---:|---:|
| Total Line Item Depreciation (Including Taxes) | 1,565.86 | |
| General Contractor O&P on Depreciation | 313.18 | |
| Replacement Cost Benefits | 1,879.04 | |
| Total Maximum Additional Amount Available If Incurred | | 1,879.04 |
| Total Amount of Claim If Incurred | | $21,291.66 |

Waller, Brandon
844-458-4300
Meeks, David Zane

## ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.

The estimate is priced based on estimated market pricing at the time of the loss. Adjustments in market pricing and timing of the repairs may impact the final cost of covered repairs. Should you or the contractor you select have questions concerning our estimate, contact your claim representative. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs. State Farm will work with you and your contractor to determine the actual and necessary cost of covered repairs at the time repairs will be completed, subject to policy limits.

Copy from re:SearchGA

**State Farm**

FISHEL-BROWN, STEPHANIE                                                    11-12Z2-61F

| | | | |
|---|---|---|---|
| Insured: | FISHEL-BROWN, STEPHANIE | Estimate: | 11-12Z2-61F |
| Property: | 602 Bentley Falls Ct | Claim Number: | 1112Z261F |
| | Canton, GA 30114 | Policy Number: | 11EPY5264 |
| Home: | 864-506-2156 | Price List: | GAAT28_OCT20 |
| Cellular: | 864-506-2156 | | Restoration/Service/Remodel |
| Type of Loss: | Wind Damage | | |
| Deductible: | $0.00 | | |
| Date of Loss: | 10/29/2020 | | |
| Date Inspected: | 12/15/2020 | | |

**Summary for Coverage A - Dwelling - 35 Windstorm and Hail - BC - Code Upgrade**

| | |
|---|---|
| Line Item Total | 0.00 |
| Replacement Cost Value | 0.00 |
| Less Deductible | (0.00) |
| Net Payment | $0.00 |

Waller, Brandon
844-458-4300
Meeks, David Zane

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

The estimate is priced based on estimated market pricing at the time of the loss. Adjustments in market pricing and timing of the repairs may impact the final cost of covered repairs. Should you or the contractor you select have questions concerning our estimate, contact your claim representative. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs. State Farm will work with you and your contractor to determine the actual and necessary cost of covered repairs at the time repairs will be completed, subject to policy limits.

Copy from re:SearchGA

 **StateFarm**

## Explanation of Building Replacement Cost Benefits
## Homeowner Policy
## Coverage A - Dwelling - 35 Windstorm and Hail

To:   Name:        FISHEL-BROWN, STEPHANIE
      Address:     602 Bentley Falls Ct
      City:        Canton
      State/Zip:   GA, 30114

Insured:        FISHEL-BROWN, STEPHANIE          Claim Number:    1112Z261F
Date of Loss:   10/29/2020                       Cause of Loss:   WIND

Your insurance policy provides replacement cost benefits for some or all of the loss or damage to your dwelling or structures. Replacement cost benefits pays the actual and necessary cost of repair or replacement, without a deduction for depreciation, subject to your policy's limit of liability. To receive replacement cost benefits you must:

1. Complete the actual repair or replacement of the damaged part of the property within two years of the date of loss;
2. Promptly notify us within 30 days after the work has been completed; and
3. Confirm completion of repair or replacement, by submitting invoices, receipts or other documentation to your agent or claim office.

Until these requirements have been satisfied, our payment(s) to you will be for the actual cash value of the damaged part of the property, which may include a deduction for depreciation.

Without waiving the above requirements, we will consider paying replacement cost benefits prior to actual repair or replacement if we determine repair or replacement costs will be incurred because repairs are substantially under way or you present a signed contract acceptable to us.

The estimate to repair or replace your damaged property is $24,740.66 . The enclosed claim payment to you of $19,412.62 is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is $ 1,879.04 .

If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim specialist prior to beginning repairs.

All policy provisions apply to your claim.

Copy from re:SearchGA

## State Farm

FISHEL-BROWN, STEPHANIE

11-12Z2-61F

### Dwelling

**Dwelling**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|---|
| 1. Temporary toilet (per month) | | | | | | | | |
| | 0.50 MO | 106.15 | 0.00 | 10.62 | 63.70 | | | 63.70 |
| **Total: Dwelling** | | | **0.00** | **10.62** | **63.70** | | **0.00** | **63.70** |

### Roof

**Roof**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|---|
| 2. 2" x 8" x 12' #2 & better Fir / Larch (material only) | | | | | | | | |
| | 6.00 EA | 19.94 | 7.18 | 25.36 | 152.18 | | | 152.18 |
| 3. R&R Sheathing - plywood - 3/8" CDX | | | | | | | | |
| | 128.00 SF | 2.56 | 6.60 | 66.86 | 401.14 | | | 401.14 |
| 4. R&R Sheathing - plywood - 1/2" CDX | | | | | | | | |
| | 96.00 SF | 2.95 | 7.20 | 58.08 | 348.48 | | | 348.48 |
| **Total: Roof** | | | **20.98** | **150.30** | **901.80** | | **0.00** | **901.80** |



**Roof**

| 3,260.77 | Surface Area | 32.61 | Number of Squares |
|---|---|---|---|
| 191.18 | Total Hip Length | 70.57 | Total Ridge Length |

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|---|
| 5. Tear off, haul and dispose of comp. shingles - Laminated | | | | | | | | |
| | 6.24 SQ | 51.10 | 0.00 | 63.78 | 382.64 | | | 382.64 |
| 6. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | |
| | 8.00 SQ | 224.08 | 47.85 | 368.10 | 2,208.59 | 9/30 yrs Avg. | (662.56) 30.00% | 1,546.03 |
| 7. Asphalt starter - universal starter course | | | | | | | | |
| | 28.08 LF | 1.88 | 0.98 | 10.76 | 64.53 | 9/20 yrs Avg. | (29.04) 45.00% | 35.49 |

Copy from re:SearchGA

**State Farm**

FISHEL-BROWN, STEPHANIE                                                                 11-12Z2-61F

**CONTINUED - Roof**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 8. Ridge cap - composition shingles | | | | | | | |
| 28.17 LF | 3.63 | 1.76 | 20.82 | 124.84 | 9/25 yrs Avg. | (44.94) 36.00% | 79.90 |
| 9. Remove Additional charge for high roof (2 stories or greater) | | | | | | | |
| 6.24 SQ | 4.56 | 0.00 | 5.70 | 34.15 | | | 34.15 |
| 10. Additional charge for high roof (2 stories or greater) | | | | | | | |
| 8.00 SQ | 16.72 | 0.00 | 26.76 | 160.52 | | | 160.52 |
| 11. Remove Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | |
| 6.24 SQ | 19.02 | 0.00 | 23.74 | 142.42 | | | 142.42 |
| 12. Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | |
| 8.00 SQ | 59.51 | 0.00 | 95.22 | 571.30 | | | 571.30 |
| 13. Drip edge | | | | | | | |
| 28.08 LF | 2.13 | 1.31 | 12.22 | 73.34 | 9/35 yrs Avg. | (18.86) 25.71% | 54.48 |
| **Totals: Roof** | | **51.90** | **627.10** | **3,762.33** | | **755.40** | **3,006.93** |

Area Totals:  Roof

|  |  |  |  |
|---|---|---|---|
| 3,309.42 | Exterior Wall Area | | |
| 3,260.77 | Surface Area | 32.61 | Number of Squares |
| 70.57 | Total Ridge Length | 191.18 | Total Hip Length |

| **Total:  Roof** | | **72.88** | **777.40** | **4,664.13** | | **755.40** | **3,908.73** |
|---|---|---|---|---|---|---|---|

**Exterior**

**Front Elevation**

|  |  |  |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 14. R&R Gutter guard - one piece seamless gutter system | | | | | | | |
| 18.50 LF | 27.51 | 17.42 | 105.26 | 631.62 | 9/20 yrs Avg. | (284.22) 45.00% | 347.40 |
| 15. R&R Fascia - 1" x 8" - #1 pine | | | | | | | |
| 18.50 LF | 6.80 | 2.38 | 25.64 | 153.83 | 25/75 yrs Avg. | (51.27) 33.33% | 102.56 |
| 16. Prime & paint exterior fascia - wood, 6"- 8" wide | | | | | | | |
| 18.50 LF | 1.91 | 0.22 | 7.10 | 42.66 | 9/15 yrs Avg. | (25.59) 60.00% | 17.07 |

Copy from re:SearchGA

**State Farm**

FISHEL-BROWN, STEPHANIE

11-12Z2-61F

**CONTINUED - Front Elevation**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 17.  R&R Crown molding - 5 1/4" | | | | | | | |
| 16.50 LF | 6.00 | 2.56 | 20.32 | 121.89 | | | 121.89 |
| 18.  Paint crown molding, oversized - one coat | | | | | | | |
| 16.50 LF | 0.96 | 0.11 | 3.18 | 19.13 | 9/15 yrs Avg. | (11.47) 60.00% | 7.66 |
| 19.  R&R Soffit - box framing - 2' overhang | | | | | | | |
| 16.50 LF | 7.54 | 1.86 | 25.26 | 151.54 | | | 151.54 |
| 20.  R&R Soffit - wood | | | | | | | |
| 33.00 SF | 5.25 | 3.64 | 35.38 | 212.27 | | | 212.27 |
| 21.  Prime & paint exterior soffit - wood | | | | | | | |
| 33.00 SF | 1.99 | 0.73 | 13.28 | 79.68 | 9/15 yrs Avg. | (47.80) 60.00% | 31.88 |
| 22.  Soffit vent | | | | | | | |
| 2.00 EA | 37.11 | 0.43 | 14.92 | 89.57 | | | 89.57 |
| 23.  Carpenter - General Framer - per hour | | | | | | | |
| 16.00 HR | 82.14 | 0.00 | 262.84 | 1,577.08 | | | 1,577.08 |
| Additional labor to complete soffit, fascia, and framing above 20 lf.  Calculation is based on two men eight hours each. | | | | | | | |
| 24.  R&R Brick mold - paint grade softwood - finger jointed | | | | | | | |
| 16.50 LF | 2.71 | 1.36 | 9.24 | 55.32 | | | 55.32 |
| 25.  Paint - molding - ornate or multi-member - two coats | | | | | | | |
| 16.50 LF | 1.60 | 0.14 | 5.30 | 31.84 | 9/15 yrs Avg. | (19.10) 60.00% | 12.74 |
| Item used to paint brick molding. | | | | | | | |
| 26.  Paint - molding - ornate or multi-member - one coat | | | | | | | |
| 2.00 LF | 1.14 | 0.02 | 0.46 | 2.76 | 9/15 yrs Avg. | (1.66) 60.00% | 1.10 |
| Item used to paint brick molding. | | | | | | | |
| 27.  Painter - per hour | | | | | | | |
| 16.00 HR | 66.94 | 0.00 | 214.20 | 1,285.24 | | | 1,285.24 |
| Additional labor to paid over 20 LF, two men eight hours each for all exterior painting. | | | | | | | |
| *****Beginning of Revisions by Jasmine Kincaid (TAN3)***** | | | | | | | |
| 28.  Paint door/window trim & jamb - Large - 2 coats (per side) | | | | | | | |
| 1.00 EA | 33.03 | 0.29 | 6.66 | 39.98 | 9/15 yrs Avg. | (23.99) 60.00% | 15.99 |
| *****End of revisions by Jasmine Kincaid***** | | | | | | | |
| **Totals:  Front Elevation** | | **31.16** | **749.04** | **4,494.41** | | **465.10** | **4,029.31** |

**Right Elevation**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

Copy from re:SearchGA

## State Farm

FISHEL-BROWN, STEPHANIE

11-12Z2-61F

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 29. R&R Fascia - 1" x 8" - #1 pine | | | | | | | |
| 16.67 LF | 6.80 | 2.14 | 23.08 | 138.57 | 25/75 yrs Avg. | (46.19) 33.33% | 92.38 |
| 30. Prime & paint exterior fascia - wood, 6"- 8" wide | | | | | | | |
| 16.67 LF | 1.91 | 0.20 | 6.40 | 38.44 | | | 38.44 |
| 31. R&R Soffit - box framing - 2' overhang | | | | | | | |
| 14.92 LF | 7.54 | 1.68 | 22.84 | 137.02 | 25/150 yrs Avg. | (22.83) 16.67% | 114.19 |
| 32. R&R Soffit - wood | | | | | | | |
| 29.83 SF | 5.25 | 3.29 | 32.00 | 191.90 | 25/150 yrs Avg. | (31.99) 16.67% | 159.91 |
| 33. Prime & paint exterior soffit - wood | | | | | | | |
| 29.83 SF | 1.99 | 0.66 | 12.02 | 72.04 | 9/15 yrs Avg. | (43.24) 60.00% | 28.80 |
| 34. Paint exterior soffit - wood - 1 coat | | | | | | | |
| 1.75 SF | 1.29 | 0.02 | 0.46 | 2.74 | 9/15 yrs Avg. | (1.65) 60.00% | 1.09 |
| 35. R&R Gutter guard - one piece seamless gutter system | | | | | | | |
| 16.67 LF | 27.51 | 15.69 | 94.86 | 569.15 | 9/20 yrs Avg. | (256.13) 45.00% | 313.02 |
| 36. R&R Brick mold - paint grade softwood - finger jointed | | | | | | | |
| 14.92 LF | 2.71 | 1.23 | 8.34 | 50.00 | | | 50.00 |
| 37. Paint - molding - ornate or multi-member - two coats | | | | | | | |
| 14.92 LF | 1.60 | 0.13 | 4.80 | 28.80 | 9/15 yrs Avg. | (17.28) 60.00% | 11.52 |
| 38. Soffit vent | | | | | | | |
| 2.00 EA | 37.11 | 0.43 | 14.92 | 89.57 | | | 89.57 |
| **Totals: Right Elevation** | | **25.47** | **219.72** | **1,318.23** | | **419.31** | **898.92** |

**Rear Elevation**

| | | | | | |
|---|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | 0.00 SF Walls & Ceiling | |
| 0.00 SF Floor | | 0.00 SF Short Wall | | 0.00 LF Floor Perimeter | |
| 0.00 SF Long Wall | | | | 0.00 LF Ceil. Perimeter | |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| No storm related damages found upon inspection | | | | | | | |
| **Totals: Rear Elevation** | | **0.00** | **0.00** | **0.00** | | **0.00** | **0.00** |

**Left Elevation**

| | | | | |
|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | 0.00 SF Walls & Ceiling |

Copy from re:SearchGA

## State Farm

FISHEL-BROWN, STEPHANIE                                                                 11-12Z2-61F

| | | |
|---|---|---|
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| No storm related damages found upon inspection | | | | | | | |
| **Totals: Left Elevation** | | **0.00** | **0.00** | **0.00** | | **0.00** | **0.00** |
| Area Totals: Exterior | | | | | | | |
| **Total: Exterior** | | **56.63** | **968.76** | **5,812.64** | | **884.41** | **4,928.23** |

### Interior



**Bedroom**                                                                               **Height: 8'**

| | |
|---|---|
| 400.14 SF Walls | 147.60 SF Ceiling |
| 547.74 SF Walls & Ceiling | 147.60 SF Floor |
| 50.02 LF Ceil. Perimeter | 50.02 LF Floor Perimeter |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **CEILING:** | | | | | | | |
| 39.  R&R Blown-in insulation - 14" depth - R38 | | | | | | | |
| 200.00 SF | 2.11 | 10.08 | 86.42 | 518.50 | | | 518.50 |
| 40.  Drywall tape joint/repair - per LF | | | | | | | |
| 10.00 LF | 6.08 | 0.18 | 12.20 | 73.18 | | | 73.18 |
| 41.  R&R 1/2" drywall - hung, taped, floated, ready for paint | | | | | | | |
| 12.00 SF | 2.28 | 0.36 | 5.54 | 33.26 | | | 33.26 |
| 42.  Seal/prime then paint the surface area (2 coats) | | | | | | | |
| 25.00 SF | 0.86 | 0.26 | 4.36 | 26.12 | | | 26.12 |
| 43.  Paint the ceiling - one coat | | | | | | | |
| 147.60 SF | 0.60 | 0.97 | 17.92 | 107.45 | 9/15 yrs Avg. | (64.48) 60.00% | 42.97 |
| **WALLS:** | | | | | | | |
| 44.  Seal/prime then paint the surface area (2 coats) | | | | | | | |
| 24.00 SF | 0.86 | 0.24 | 4.16 | 25.04 | | | 25.04 |
| 45.  Paint the walls - one coat | | | | | | | |
| 400.14 SF | 0.60 | 2.64 | 48.54 | 291.26 | 9/15 yrs Avg. | (174.75) 60.00% | 116.51 |
| 46.  Mask per square foot for drywall work | | | | | | | |
| 147.60 SF | 0.20 | 0.44 | 5.98 | 35.94 | | | 35.94 |
| 47.  Content Manipulation charge - per hour | | | | | | | |
| 1.00 HR | 36.47 | 0.00 | 7.30 | 43.77 | | | 43.77 |
| **FLOORING: No damage to flooring** | | | | | | | |

Date:    3/8/2021 6:15 PM                                                                 Page: 10

Copy from re:SearchGA

**State Farm**

FISHEL-BROWN, STEPHANIE                                                          11-12Z2-61F

**CONTINUED - Bedroom**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Bedroom** | | **15.17** | **192.42** | **1,154.52** | | **239.23** | **915.29** |

Area Totals:  Interior

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 400.14 SF Walls | | 147.60 SF Ceiling | | | 547.74 SF Walls and Ceiling | | |
| 147.60 SF Floor | | 164.70 Total Area | | | 50.02 LF Floor Perimeter | | |
| 147.60 Floor Area | | 52.57 Exterior Perimeter | | | 50.02 LF Ceil. Perimeter | | |
| 473.13 Exterior Wall Area | | of Walls | | | 400.14 Interior Wall Area | | |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Total:  Interior** | | **15.17** | **192.42** | **1,154.52** | | **239.23** | **915.29** |

**Fence**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | | 0.00 SF Walls & Ceiling | | |
| 0.00 SF Floor | | 0.00 SF Short Wall | | | 0.00 LF Floor Perimeter | | |
| 0.00 SF Long Wall | | | | | 0.00 LF Ceil. Perimeter | | |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 48.  R&R Post & rail fence - 3 rail - cedar or equal | | | | | | | |
| 80.00 LF | 21.91 | 61.34 | 362.82 | 2,176.96 | | | 2,176.96 |
| 49.  R&R Welded-wire mesh fence - fabric only - 4' high - 12 gauge | | | | | | | |
| 80.00 LF | 3.53 | 6.96 | 57.88 | 347.24 | | | 347.24 |
| **Totals:  Fence** | | **68.30** | **420.70** | **2,524.20** | | **0.00** | **2,524.20** |

**Temporary Repairs**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | | 0.00 SF Walls & Ceiling | | |
| 0.00 SF Floor | | 0.00 SF Short Wall | | | 0.00 LF Floor Perimeter | | |
| 0.00 SF Long Wall | | | | | 0.00 LF Ceil. Perimeter | | |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| * 50.  emergency tarp | | | | | | | |
| 1.00 EA | 500.00 *EN | 0.00 | 0.00 | 500.00 | | | 500.00 |
| Invoice from Sentinel Exteriors | | | | | | | |
| **Totals:  Temporary Repairs** | | **0.00** | **0.00** | **500.00** | | **0.00** | **500.00** |

Copy from re:SearchGA

## State Farm

FISHEL-BROWN, STEPHANIE                                                                          11-12Z2-61F

**Tree Removal**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| * 51.  Tree Removal Invoice | | | | | | | |
| 1.00 EA | 9,400.00 *EN | 0.00 | 0.00 | 9,400.00 | | | 9,400.00 |
| Invoice from Sentinel Exteriors for tree on dwelling and trees on fence | | | | | | | |
| **Totals:  Tree Removal** | | **0.00** | **0.00** | **9,400.00** | | **0.00** | **9,400.00** |

**Debris Removal**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 52.  Tandem axle dump trailer - per load - including dump fees | | | | | | | |
| 1.00 EA | 207.05 | 0.00 | 41.42 | 248.47 | | | 248.47 |
| **Totals:  Debris Removal** | | **0.00** | **41.42** | **248.47** | | **0.00** | **248.47** |

Area Totals:  Dwelling

| | | |
|---|---|---|
| 400.14 SF Walls | 147.60 SF Ceiling | 547.74 SF Walls and Ceiling |
| 147.60 SF Floor | 164.70 Total Area | 50.02 LF Floor Perimeter |
| 147.60 Floor Area | 52.57 Exterior Perimeter of Walls | 50.02 LF Ceil. Perimeter |
| 3,782.55 Exterior Wall Area | | 400.14 Interior Wall Area |
| 3,260.77 Surface Area | 32.61 Number of Squares | |
| 70.57 Total Ridge Length | 191.18 Total Hip Length | |

| | | TAX | GCO&P | RCV | | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Total:  Dwelling** | | **212.98** | **2,411.32** | **24,367.66** | | **1,879.04** | **22,488.62** |

**Labor Minimums Applied**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 53.  Finish carpentry labor minimum | | | | | | | |
| 1.00 EA | 84.04 | 0.00 | 16.80 | 100.84 | | | 100.84 |
| 54.  Drywall labor minimum | | | | | | | |
| 1.00 EA | 226.80 | 0.00 | 45.36 | 272.16 | | | 272.16 |

Copy from re:SearchGA

## State Farm

FISHEL-BROWN, STEPHANIE

11-12Z2-61F

### CONTINUED - Labor Minimums Applied

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Labor Minimums Applied** | | **0.00** | **62.16** | **373.00** | | **0.00** | **373.00** |
| **Line Item Totals:  11-12Z2-61F** | | **212.98** | **2,473.48** | **24,740.66** | | **1,879.04** | **22,861.62** |

### Grand Total Areas:

| | | |
|---|---|---|
| 400.14 SF Walls | 147.60 SF Ceiling | 547.74 SF Walls and Ceiling |
| 147.60 SF Floor | | 50.02 LF Floor Perimeter |
| | | 50.02 LF Ceil. Perimeter |
| | | |
| 147.60 Floor Area | 164.70 Total Area | 400.14 Interior Wall Area |
| 3,782.55 Exterior Wall Area | 52.57 Exterior Perimeter of Walls | |
| | | |
| 3,260.77 Surface Area | 32.61 Number of Squares | |
| 70.57 Total Ridge Length | 191.18 Total Hip Length | |

Copy from re:SearchGA

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **CON      CONTENT MANIPULATION** | | | | | | |
| Content Manipulation charge - per hour | 1.00 HR | $43.77 | $7.30 | $43.77 | $0.00 | $0.00 |
| **TOTAL CONTENT MANIPULATION** | | **$43.77** | **$7.30** | **$43.77** | **$0.00** | **$0.00** |
| **DMO      GENERAL DEMOLITION** | | | | | | |
| Tree Removal Invoice | 1.00 EA | $9,400.00 | $0.00 | $9,400.00 | $0.00 | $0.00 |
| Tandem axle dump trailer - per load - including dump fees | 1.00 EA | $248.47 | $41.42 | $248.47 | $0.00 | $0.00 |
| **TOTAL GENERAL DEMOLITION** | | **$9,648.47** | **$41.42** | **$9,648.47** | **$0.00** | **$0.00** |
| **DRY      DRYWALL** | | | | | | |
| R&R 1/2" drywall - hung, taped, floated, ready for paint | 12.00 SF | $33.26 | $5.54 | $33.26 | $0.00 | $0.00 |
| Mask per square foot for drywall work | 147.60 SF | $35.94 | $5.98 | $35.94 | $0.00 | $0.00 |
| Drywall labor minimum | 1.00 EA | $272.16 | $45.36 | $272.16 | $0.00 | $0.00 |
| Drywall tape joint/repair - per LF | 10.00 LF | $73.18 | $12.20 | $73.18 | $0.00 | $0.00 |
| **TOTAL DRYWALL** | | **$414.54** | **$69.08** | **$414.54** | **$0.00** | **$0.00** |
| **FEN      FENCING** | | | | | | |
| R&R Welded-wire mesh fence - fabric only - 4' high - 12 gauge | 80.00 LF | $347.24 | $57.88 | $347.24 | $0.00 | $0.00 |
| R&R Post & rail fence - 3 rail - cedar or equal | 80.00 LF | $2,176.96 | $362.82 | $2,176.96 | $0.00 | $0.00 |
| **TOTAL FENCING** | | **$2,524.20** | **$420.70** | **$2,524.20** | **$0.00** | **$0.00** |
| **FNC      FINISH CARPENTRY / TRIMWORK** | | | | | | |
| R&R Brick mold - paint grade softwood - finger jointed | 31.42 LF | $105.32 | $17.58 | $105.32 | $0.00 | $0.00 |
| R&R Crown molding - 5 1/4" | 16.50 LF | $121.89 | $20.32 | $121.89 | $0.00 | $0.00 |
| Finish carpentry labor minimum | 1.00 EA | $100.84 | $16.80 | $100.84 | $0.00 | $0.00 |
| **TOTAL FINISH CARPENTRY / TRIMWORK** | | **$328.05** | **$54.70** | **$328.05** | **$0.00** | **$0.00** |
| **FRM      FRAMING & ROUGH CARPENTRY** | | | | | | |
| 2" x 8" x 12' #2 & better Fir / Larch (material only) | 6.00 EA | $152.18 | $25.36 | $152.18 | $0.00 | $0.00 |
| Carpenter - General Framer - per hour | 16.00 HR | $1,577.08 | $262.84 | $1,577.08 | $0.00 | $0.00 |
| **TOTAL FRAMING & ROUGH CARPENTRY** | | **$1,729.26** | **$288.20** | **$1,729.26** | **$0.00** | **$0.00** |
| **INS      INSULATION** | | | | | | |
| R&R Blown-in insulation - 14" depth - R38 | 200.00 SF | $518.50 | $86.42 | $518.50 | $0.00 | $0.00 |
| **TOTAL INSULATION** | | **$518.50** | **$86.42** | **$518.50** | **$0.00** | **$0.00** |
| **PNT      PAINTING** | | | | | | |
| Paint crown molding, oversized - one coat | 16.50 LF | $19.13 | $3.18 | $7.66 | $0.00 | $11.47 |

Note:  Slight variances may be found within report sections due to rounding

Copy from re:SearchGA

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **PNT     PAINTING** | | | | | | |
| Paint door/window trim & jamb - Large - 2 coats (per side) | 1.00 EA | $39.98 | $6.66 | $15.99 | $0.00 | $23.99 |
| Prime & paint exterior fascia - wood, 6"- 8" wide | 35.17 LF | $81.10 | $13.50 | $55.51 | $0.00 | $25.59 |
| Painter - per hour | 16.00 HR | $1,285.24 | $214.20 | $1,285.24 | $0.00 | $0.00 |
| Paint - molding - ornate or multi-member - one coat | 2.00 LF | $2.76 | $0.46 | $1.10 | $0.00 | $1.66 |
| Paint - molding - ornate or multi-member - two coats | 31.42 LF | $60.64 | $10.10 | $24.26 | $0.00 | $36.38 |
| Paint  - one coat | 547.74 SF | $398.71 | $66.46 | $159.48 | $0.00 | $239.23 |
| Prime & paint exterior soffit - wood | 62.83 SF | $151.72 | $25.30 | $60.68 | $0.00 | $91.04 |
| Paint exterior soffit - wood - 1 coat | 1.75 SF | $2.74 | $0.46 | $1.09 | $0.00 | $1.65 |
| Seal/prime then paint  (2 coats) | 49.00 SF | $51.16 | $8.52 | $51.16 | $0.00 | $0.00 |
| **TOTAL PAINTING** | | **$2,093.18** | **$348.84** | **$1,662.17** | **$0.00** | **$431.01** |
| **RFG     ROOFING** | | | | | | |
| Laminated - comp. shingle rfg. - w/ felt | 8.00 SQ | $2,208.59 | $368.10 | $1,546.03 | $0.00 | $662.56 |
| Tear off, haul and dispose of comp. shingles - Laminated | 6.24 SQ | $382.64 | $63.78 | $382.64 | $0.00 | $0.00 |
| Asphalt starter - universal starter course | 28.08 LF | $64.53 | $10.76 | $35.49 | $0.00 | $29.04 |
| Drip edge | 28.08 LF | $73.34 | $12.22 | $54.48 | $0.00 | $18.86 |
| Additional charge for high roof (2 stories or greater) | 8.00 SQ | $160.52 | $26.76 | $160.52 | $0.00 | $0.00 |
| Remove Additional charge for high roof (2 stories or greater) | 6.24 SQ | $34.15 | $5.70 | $34.15 | $0.00 | $0.00 |
| Ridge cap - composition shingles | 28.17 LF | $124.84 | $20.82 | $79.90 | $0.00 | $44.94 |
| R&R Sheathing - plywood - 1/2" CDX | 96.00 SF | $348.48 | $58.08 | $348.48 | $0.00 | $0.00 |
| R&R Sheathing - plywood - 3/8" CDX | 128.00 SF | $401.14 | $66.86 | $401.14 | $0.00 | $0.00 |
| Additional charge for steep roof - 10/12 - 12/12 slope | 8.00 SQ | $571.30 | $95.22 | $571.30 | $0.00 | $0.00 |
| Remove Additional charge for steep roof - 10/12 - 12/12 slope | 6.24 SQ | $142.42 | $23.74 | $142.42 | $0.00 | $0.00 |
| **TOTAL ROOFING** | | **$4,511.95** | **$752.04** | **$3,756.55** | **$0.00** | **$755.40** |
| **SFG     SOFFIT, FASCIA, & GUTTER** | | | | | | |
| R&R Fascia - 1" x 8" - #1 pine | 35.17 LF | $292.40 | $48.72 | $194.94 | $0.00 | $97.46 |
| R&R Gutter guard - one piece seamless gutter system | 16.67 LF | $569.15 | $94.86 | $313.02 | $0.00 | $256.13 |
| R&R Gutter guard - one piece seamless gutter system | 18.50 LF | $631.62 | $105.26 | $347.40 | $0.00 | $284.22 |
| R&R Soffit - wood | 62.83 SF | $404.17 | $67.38 | $372.18 | $0.00 | $31.99 |

Note:  Slight variances may be found within report sections due to rounding

Date:    3/8/2021 6:15 PM

Copy from re:SearchGA

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **SFG    SOFFIT, FASCIA, & GUTTER** | | | | | | |
| Soffit vent | 4.00 EA | $179.14 | $29.84 | $179.14 | $0.00 | $0.00 |
| R&R Soffit - box framing - 2' overhang | 31.42 LF | $288.56 | $48.10 | $265.73 | $0.00 | $22.83 |
| **TOTAL SOFFIT, FASCIA, & GUTTER** | | **$2,365.04** | **$394.16** | **$1,672.41** | **$0.00** | **$692.63** |
| **TMP    TEMPORARY REPAIRS** | | | | | | |
| emergency tarp | 1.00 EA | $500.00 | $0.00 | $500.00 | $0.00 | $0.00 |
| Temporary toilet (per month) | 0.50 MO | $63.70 | $10.62 | $63.70 | $0.00 | $0.00 |
| **TOTAL TEMPORARY REPAIRS** | | **$563.70** | **$10.62** | **$563.70** | **$0.00** | **$0.00** |
| **TOTALS** | | **$24,740.66** | **$2,473.48** | **$22,861.62** | **$0.00** | **$1,879.04** |

Note:  Slight variances may be found within report sections due to rounding

Date:    3/8/2021 6:15 PM

Copy from re:SearchGA



Roof



Roof



Bedroom



Interior

Copy from re:SearchGA

# EXHIBIT C

Copy from re:SearchGA



**Corporate Office**
404 Billings Farm Drive, Canton GA 30115
Telephone: (404) 323-6846
Email: HunterAdjusting@Gmail.com
Public Adjuster License #3252220
GA Contractor License #GCCO00453

## <u>Final Warning- Demand Letter</u>

01/04/2021

**Insurance Company**
State Farm Insurance
One State Farm Plaza
Bloomington, IL 61710

**Insured/ Policyholder**
Insured: Fishel-Brown, Benjamin & Stephanie ("Policy Holder")
Claim #: 11-12Z2-61F
Property Address: 602 Bentley Falls Ct, Canton GA 30114
Policy #: 11-EP-Y526-4
Date of Loss: 10/29/2020

**Attn: Claims Manager**

Please review the "Notice of Representation" on the claim file, I am licensed by the State of Georgia, Department of Insurance Under GA Code § 33-23-43 (2014). The undersigned (the Insured) hereby retained Hunter Public Adjusting Corp to be there representative regarding the settlement of a claim or claims under the policy for damages to real and personal property, including any related loss of income and living expense losses.

Attached is Insureds **Reasonable Valuation in an Effort to Reach a Settlement**. State Farm's previous estimate dated 11/28/2020 and 12/30/2020 respectively; attempts to remove coverage afforded by the loss. State Farm Insurance to this point has not provided any factual explanations of any policy coverages, provisions, or exceptions; excluding the damages, consequential damages, or any proper explanation allowing for any reduction of coverage other than inhouse estimating guidelines that are not part of the policy language. **We have provided our valuation using the same software used by State Farm, depreciation has been properly calculated, and the scope of work was completed by a licensed General Contractor and Public Adjuster.**

**The estimates provided by State Farm representatives whom do not hold any advanced training or licenses in construction, and does not properly indemnify the insured for the scope and costs necessary to complete the work with a properly licensed and insured contractor** to follow Georgia ICC Building Codes----**Also Known as MINIMUM Acceptable Industry Standard of Performance,** Federal OSHA Requirements, Proper Workers Comp Classification, and Construction Industry Best Business Practices. Instead it promotes breaking State and Federal Laws and hiring unlicensed contractors in an effort to lower costs. There Is A Legal Requirement Placed Upon ALL Contractors To Perform To A Minimum..... (Read That Again), To A MINIMUM Acceptable Industry Standard Of Performance.....

Based upon the results of our site inspection, discussions, and investigation, it was determined the loss is covered by the policy, and the term and conditions of the policy shall dictate how the loss is covered in addition to Georgia's Unfair Claims Settlement Practices requires the following;
33-6-34. Unfair claims settlement practices
(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue;

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;

Copy from re:SearchGA

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies;

**(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear;**

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;

(6) Refusing to pay claims without conducting a reasonable investigation;

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims;

**(10) When requested by the insured in writing, failing in the case of claims denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such actions**. In the case of claims denials, such denials shall be in writing;

Indemnity is defined as a contractual obligation of one party (indemnifier) to compensate the loss incurred to the other party (indemnity holder) due to the acts of the indemnitor or any other party. The insurance contract is built around this principle. The following reasonable demand is for indemnity. This is not a retail bid for construction and not a race to the bottom to see who can do it the cheapest. This is compliance with an insurance contract to make the insured whole and bring them to pre-loss condition. Our reasonable valuation is to make the insured whole and bring the insured to a pre-loss condition. To bring an insured to pre-loss condition, all the obligations of the insurance contract, building code, manufacturer's instructions, OSHA and other requirements must be met and are reflected in the reasonable payment demand. These are not upgrades and are not the cost of doing business. **After reading the contract, I have not seen anywhere that specifically says any of my line items are not paid for and since all of the items are reasonable, they should be paid in accordance with the principle of indemnity.**

The estimator has met all requirements, experience and training for a Georgia Public Adjusting license, Georgia General Contractor's license, a Florida Building Contractor's license, a Florida Mold Remediation license, and Certified by the IICRC as WRT, ASD, FRST, OCT, CCT, and by the ACAC (Indoor Air Quality Association) as MRS.  This estimate was prepared accordingly. The estimator understands what overhead and profit is and how it applies to business, OSHA standards and the consequences of not adhering to their requirements, as well as general construction processes and time involved in the construction.  The estimator understands that skilled labor and licensing is required for specific trades such as roofing, electrical and plumbing so the estimate will accurately reflect the appropriate labor codes. The estimator also understands that the increase in the cost of the line item is justified due to the necessity for skilled labor and the increased costs in worker's compensation rates for workers involved in these trades.

The following is from the **"National Association of Home Builders"** and INFORMS
Residential Construction Performance Guidelines
Consumer Reference Fourth Edition
NAHB Remodelers Single Family Small Volume Builders Committee

**READ FURTHER TO SEE WHAT "INDUSTRY STANDARDS" ACTUALLY MEAN, AND REQUIRE..........**

"It is this arena of "Industry Standards" where the terrain has become rocky and uncharted. Consider the various allegations that have historically been included in construction defect complaints seeking damages for alleged deviations from industry standards which are asserted as a measure of a contractor's performance:

1. Violation of the Regulatory Laws; the building codes and local building ordinances.

Copy from re:SearchGA

2. Failure to Adhere to Local Customs and Practice; a collection of unwritten standards that all contractors in a given area are expected and required to comply with.

3. Disregard of Trade Associations Preferred Practices; a collection of recommendations for higher levels of workmanship that are created by and for the members of private trade associations.

4. Deviation from the Standard of Care; unwritten, but recognized obligations that apply to contractors during the process of construction.

5. Manufacturers' Written Specifications for Listed and Non-Listed Products; the precise requirements for the installation of listed and non-listed products specified by the manufacturer.

To adequately evaluate the merits of the various allegations involving a contractor's performance in a construction defect case, consider the legal effect of the alleged industry standards at issue:

**1. REGULATORY LAWS:** This standard for compliance is based upon the building codes that have been adopted by the state and the ordinances that have been created by local communities. When any state adopts a body of codes to regulate building activities, methods and materials, it can only be superseded by local communities that create more restrictive provisions than the state adopted codes. In Georgia the body of law that comprises the building codes is known as Uniform Codes Act is codified at chapter 2 of title 8 of The Official Code of Georgia Annotated. O.C.G.A. Section 8-2-20(9)(B) of Regulations. Although acknowledged as the minimum requirements for construction performance, it is a collection of formidable requirements that must be complied with and are the only enforceable standards that contractors must adhere to. The operative word is "enforceable."

**2. LOCAL CUSTOMS AND PRACTICE:** Many experts and attorneys have attempted to make this concept stand up as a recognized "standard." Customs and practices are similar to when an employer will allow its workers to come to work on Fridays in casual clothes. For that company, "Casual Fridays" has become a local custom and practice. If a worker did not want to dress down on Friday, there is no adverse consequence; it is unenforceable. The concept that in certain communities all of the contractors have universally established informal practices that then become enforceable within their locality is simply a fabrication of wishful thinkers. There are no practical examples of when this ever takes place. If local conditions require regional variations, special action or attention, the governing authority incorporates the requirement into a local ordinance…a law, and that becomes the enforceable standard. **Local customs and practices are not standards.**

**3. TRADE ASSOCIATIONS PREFERRED SPECIFICATIONS:** There are numerous professional construction associations that solicit contractor membership in order to establish a more elite group of practitioners. Typically, the trade associations will establish higher standards of performance for their members as a "value added" reason to hire a member contractor over another. The concept is similar to General Motors' "Mr. GoodWrench." And even though a contractor might be a member of a "roofers' association" or a "plumbers' association" that has preferred practices for its members, there is still no legal requirement for any member (or non-member) to adhere to that association's standards. Consequently, private association practices are not industry standards.

**4. STANDARD OF CARE:** Standard of care claims have no application against contractors. Typically, these claims are based upon the legal doctrine of negligence and apply and refer to professionals performing design services for clients. Within the construction industry, a standard of care complaint is usually brought against the project engineer or architect. Violation of the standard of care is defined as negligent conduct required by law for the protection of persons or property from foreseeable risks of harm. Such claims might include failure to consider the bearing capacity of the soil for the intended structure or specifying a window system that did not meet the wind load conditions at the site. Architects and other design professionals are held to this standard by virtue of their education, knowledge, training and experience. The problem for all that assert this claim (or even defense) is that the "standard" is often a subjective issue upon which reasonable people can disagree. The application of this standard to design professionals can only come from expert testimony since, as a custom and practice, it is not committed to writing.

a. In light of the above definition, contractors are not considered "professionals" in the sense of registered

Copy from re:SearchGA

architects and engineers and cannot be held to a standard of care for construction activities. In many cases, contractors lack the education and certification to perform any service other than the mechanical process of construction. (Some states do not even require that contractors be licensed. California has no education requirement for license applicants and no continuing education requirements for licensees.) For the most part, every direction or instruction that a contractor needs to execute the specifications for a given project is provided in writing. Prior to bidding a job, contractors are given drawings, specifications, project manuals, schedules of fixtures, appliances, windows and doors. They are even told what size nails to use and how they are to be spaced. Additionally, they are given a copy of the contract, general conditions of the contract, a sample of the invoice to be used and a list of insurance coverage to be provided. Contractors are even given instructions on the process of how to fill out the bidding forms. Nothing is left to the discretion of the contractor.

b. During the course of the project other professionals including the architect, the building authority, public utility inspectors, lenders, manufacturers' representatives, OSHA agents and others inspect and verify that the written instructions are faithfully adhered to. In this environment, construction contractors are little more than mechanics of the process adhering to the only standards that applies – the adopted building codes and manufacturers' specifications. It might be argued that a general contractor has the responsibility to manage the execution of the various trades contributing to the project. The only foreseeable consequence to the failure to properly manage the work is the nonconformance of the work with the plans, building codes or manufacturers' specifications. That takes the claim back to the written laws and rules…

**5. MANUFACTURERS' PRECISE SPECIFICATIONS:** The manufacturers of appliances, equipment, fixtures and devices that are used in the construction of a building create specific installation instructions that guarantee compliance with the building codes or are requisites for a warranty. Prior to distribution of products, manufacturers must secure an International Code Commission Evaluation Service (ICC-ES) report and certification. ICC-ES is a nonprofit, public-benefit corporation that does technical evaluations of building products, components, methods, and materials. The evaluation process culminates with the issuance of technical reports that, because they directly address the issue of code compliance, are used by both regulatory agencies and building-product manufacturers. Additionally, numerous accrediting agencies, working under the authority of OSHA establish accepted standards that are incorporated into the body of the building codes by reference. These standards can be found in the appendices of the code volumes. Building authorities use evaluation reports to help determine code compliance and enforce building regulations; manufacturers use reports as evidence that their products meet code requirements and warrant regulatory approval. All of these entities look to the various agencies' evaluation reports for evidence that products and systems are code-compliant. Consequently, the manufacturer's specifications for use, installation and configuration are incorporated within the codes as enforceable industry standards.

There are also products used in construction which do not require certification but nonetheless, have very precise specifications for the proper use and installation. Quite often, the manufacturer will withdraw their warranties if their instructions are not followed. Solid wood or wood product doors, for example, carry a manufacturer's warranty for stability and assembly. That warranty is voided if the contractor does not paint all six sides of the door as indicated in the product literature that comes with the door. The application of elastomeric paint, for example, is not a code issue, but the manufacturer will withdraw its warranty for longevity if the contractor does not apply the product in strict conformance with the instructions on the container. Even though this product specification is not enforceable under the code, it is a standard that universally applies to every contractor who installs a particular product; listed or not. Most often, this type of claim falls under the breach of contract complaints for failing to perform the work in a "workmanlike manner." Thus it is a contract issue, not a standard issue…..."

Incurred cost is a basic accounting principle and is defined as a cost that a company becomes liable for. If there is agreement that the loss is covered by the contract, the insurer becomes liable for this loss as it is an incurred cost. The insured and an insurer have an insurance contract, not a construction contract. The insured incurred cost in the amount of our estimate when the loss occurred. **We have met our obligations of the contract by fulfilling our "Section 1 Conditions, Your Duties After Loss".** Now, State Farm must meet their duties of indemnity as stated in **"Section 1, Loss Settlement" …, "Section 1, Conditions"** … State Farm has not invoked their option to undertake the repairs themselves under **"Section 1 Conditions, 7. Our Option"** …

Copy from re:SearchGA

We have provided State Farm Insurance with necessary documentation to that a reasonable person would agree that damages have occurred that are covered under the policy.   The insured has now completed their requirements under; "Your Duties After Loss", and demand the payment of the reasonable valuation as submitted by Hunter Public Adjusting Corp for the loss for $71,445.79, within 7 days to properly indemnify the insured per the policy and proper method of repair/ replacement as outlined in the reasonable valuation.

 **If payment is not issued within 7 days additional action will be taken; so, there are no further misrepresentations, delays, and unfair claims handling.**

**This final demand shall serve as 60 Days' Notice Pursuant to OCGA § 33-4-6, as the insured plans to take legal action for bad faith if the claim is not paid.**

**Public Insurance Adjuster**
Hunter Public Adjusting Corp.

By: _____ Date: 01/04/2021
Matthew John Hunter, President

**Policy Holder(s)**

Stephanie Fishel-Brown

(Printed Name of Policyholder)

By: _Stephanie Fishel-Brown_ Date: Jan 4, 2021
Stephanie Fishel-Brown (Jan 4, 2021 09:38 EST)

(Policyholder's Signature)

Enclosures:    FISHEL-BROWN_SPOL_120420
               FISHEL-BRN_HPAC_EST2_120220 (repriced Dec)

Copy from re:SearchGA

# SWORN STATEMENT IN PROOF OF LOSS

Claim # _____ 11-12Z2-61F _____

It is understood and agreed that the furnishing of this blank form and any assistance by any representative of the Company in completing it, does not waive any rights of the Company under any conditions of the policy.

The policy names _____ FISHEL-BROWN, STEPHANIE & BENJAMIN _____ as the insured and is/was effective from 12:01 a.m. 06/29/2020 to 12:01 a.m. 06/29/2021. Policy number under which you have filed a claim is _____ 11-EP-Y526-4 _____

1. **Time and Origin:** A _____ STORM _____ loss occurred on the 29 day of OCTOBER, 20 20, at 4 ■AM ☐PM caused by TROPICAL STORM ZETA

2. **Occupancy:** The building described or containing the property insured was occupied for no other purpose than the following: PERSONAL HOME

3. **Title and Interest:** At the time of the loss the interest of the Insured in the property described was sole and unconditional ownership and no other person or persons had any interest therein, lien or encumbrance thereon, except: NATIONSTAR MORTGAGE LLC DBA MR COOPER

4. **Changes:** The following changes have occurred in the title, use, occupancy or possession of the property since the policy was written. If none, please say so. NONE

5. **Other Insurance:** List any and all insurance policies or binders that you or anyone else has that may cover any of the property for which a claim is included, oral or written NONE

6. **Damages:** Please itemize the damage or loss within each of these categories:

| Coverage Involved | Replacement Cost of Damage | Actual Cash Value of Damage | Amount Claimed Under this Policy |
|---|---|---|---|
| DWELLING | $69,070.94 | $64,261.11 | $69,070.94 |
| ICC (O&L) | $2,374.85 | $2,374.85 | $2,374.85 |
|  |  |  |  |
|  |  |  |  |
| **TOTALS** | **$71,445.79** | **$66,635.96** | **$71,445.79** |

The insured(s) reserve all rights he/she/they may have under the insurance policy, including, but not limited to, supplementing the claim/or filing additional Proofs of Loss, should cause arise. The Proof of Loss does not address hidden damages and does not include any unknown damages or complications or additional costs that may be associated with any repair/replacement of the damages to the insured property. If this Proof of Loss does not comply with the policy conditions, you are hereby instructed to inform the insured(s) within 15 days from the date of the Proof of Loss or any deficiencies will be considered waived.

I understand I must support my claim through the submission of appropriate documentation and that whether submitted by me or on my behalf, any such submissions are material representations in making this claim. I understand that if my claimed amount is based upon replacement cost, if such policy provisions exist, those provisions must be met before such portions of the loss are payable.

I have not intentionally caused this loss. I have not in any way done anything to violate the conditions of the policy. The loss or damage did not occur as a result of my willful act or failure to act. I have not in any manner concealed any fact about the loss or tried to deceive the Company as to the extent of the loss. I will provide any other information that may be necessary to support my claim and have reviewed statutory fraud provisions on the back of this form.

Subscribed and sworn to before me this _____ day of December, 30 20

State of GA   County of Cherokee

TERESA PANT...
NOTARY
FORBES
GEORGIA
January 24, 202...
PUBLIC
CHEROKEE COUNTY

Notary Public _____ Teresa Fant...

Insured _____

Insured Stephanie Fishel-Brown

(PLEASE REFER TO FRAUD LANGUAGE ON BACK BEFORE SIGNING)     Page 1 of 2

Copy from re:SearchGA

 **Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

| | | | |
|---|---|---|---|
| Insured: | FISHEL-BROWN, BENJAMIN & STEPHANIE | Home: | (864) 506-2156 |
| Property: | 602 BENLEY FALLS CT | E-mail: | SFISHELBROWN@GMAIL.COM |
| | CANTON, GA 30114 | | |

| | | | |
|---|---|---|---|
| Estimator: | Matthew Hunter | Business: | (404) 323-6846 |
| Position: | Public Insurance Adjuster | E-mail: | Claims@GoHPAC.com |
| Company: | Hunter Public Adjusting Corp | | |
| Business: | 404 Billings Farm Drive | | |
| | Canton, GA 33015-8360 | | |

**Claim Number:** 11-12Z2-61F     **Policy Number:** 11-EP-Y526-4     **Type of Loss:** Storm Damage

| | | | |
|---|---|---|---|
| Date of Loss: | 10/28/2020 12:00 AM | Date Received: | 10/30/2020 12:00 AM |
| Date Inspected: | 10/30/2020 12:00 AM | Date Entered: | |

| | |
|---|---|
| Price List: | GAAT8X_DEC20 |
| | Restoration/Service/Remodel |
| Estimate: | FISHEL-BRN_HPAC_EST1 |

**PRELIMINARY SWORN STATEMENT IN CONDITIONAL PROOF OF LOSS (Subject to Modification)**

Please be advised, insurance proceeds are paid upon the premise that if a cost would be incurred, then a cost would be owed. More specifically, items such as permits, re-nailing of the deck, OSHA safety standards, or any similar items must be paid in good faith as they are the standard practice of construction and unavoidable, to only pay these as "Cost Incurred" items is to misrepresent the policy which is a violation of Georgia Insurance Code § 33-6-34 under the Unfair Claims Settlement Practices.

Insurer understands and acknowledges that pursuant to § 33-1-16 Georgia Statutes, (a) For the purposes of this Code section, a person commits a "fraudulent insurance act" if he: (1) Knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented, to or by an insurer, purported insurer, broker, or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of, an insurance policy, or a claim for payment or other benefit pursuant to an insurance policy, which he knows to contain materially false information concerning any fact material thereto or if he conceals, for the purpose of misleading another, information concerning any fact material thereto; or (2) Knowingly and willfully transacts any contract, agreement, or instrument which violates this title.

Insurer shall confirm the accuracy and completeness of any and all information and documentation provided to Public Adjuster/Policy Holder and any and all forms or other documents signed and/or provided to the insured for purposes of adjusting through the preparation and submission of a claim for loss, damage, and recovery under this insurance policy.

Please see the attached reasonable demand and preliminary Sworn Statement in Conditional Proof of Loss for the above referenced claim number. I look forward to settling this claim with you.

Regards,


Matthew Hunter
License # 3252220

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

**Property**

**ROOF**



**Roof1**

| | | | |
|---|---|---|---|
| 3120.01 | Surface Area | 31.20 | Number of Squares |
| 351.40 | Total Perimeter Length | 68.96 | Total Ridge Length |
| 187.28 | Total Hip Length | | |

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Laminated - comp. shingle rfg. - w/ felt | | | | | | | | | | |
| | 31.20 SQ | 120.08 | 0.00 | 749.30 | 4,495.80 | 12/30 yrs | Avg. | NA | (0.00) | 4,495.80 |

*The trade allocations for remove/detach have been changed from DMO to their appropriate labor grouping. A separate demolition crew is not called in specifically for removal any components, nor would it be proper to do so. The work inherently requires the skilled labor of the related crew trained in specific techniques and OSHA guidelines, not a general demolition crew.*

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 2. Laminated - comp. shingle rfg. - w/out felt | | | | | | | | | | |
| | 37.00 SQ | 196.51 | 208.92 | 1,495.96 | 8,975.75 | 12/30 yrs | Avg. | 40% | (1,476.40) | 7,499.35 |
| 3. Roofing felt - synthetic underlayment | | | | | | | | | | |
| | 34.32 SQ | 38.60 | 35.21 | 271.99 | 1,631.95 | 12/20 yrs | Avg. | 60% | (373.25) | 1,258.70 |

*Breathable Underlayment is Required by Current Roofing Material Manufacturers Installation Instructions*

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 4. Flashing - pipe jack | | | | | | | | | | |
| | 4.00 EA | 38.06 | 2.64 | 30.98 | 185.86 | 12/35 yrs | Avg. | 34.29% | (16.02) | 169.84 |
| 5. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | | |
| | 2.42 SQ | 12.12 | | 5.87 | 35.20 | 12/NA | Avg. | NA | (0.00) | 35.20 |
| 6. Additional charge for steep roof - 7/12 to 9/12 slope | | | | | | | | | | |
| | 2.86 SQ | 37.87 | 0.00 | 21.66 | 129.97 | 12/NA | Avg. | 0% | (0.00) | 129.97 |
| 7. Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | | |
| | 28.81 SQ | 19.04 | 0.00 | 109.71 | 658.25 | 12/NA | Avg. | NA | (0.00) | 658.25 |
| 8. Additional charge for steep roof - 10/12 - 12/12 slope | | | | | | | | | | |
| | 34.00 SQ | 59.51 | 0.00 | 404.67 | 2,428.01 | 12/NA | Avg. | 0% | (0.00) | 2,428.01 |
| 9. Flashing - L flashing - galvanized | | | | | | | | | | |
| | 28.00 LF | 5.00 | 2.47 | 28.49 | 170.96 | 12/35 yrs | Avg. | 34.29% | (14.96) | 156.01 |
| 10. Digital satellite system - Detach & reset | | | | | | | | | | |
| | 2.00 EA | 31.18 | 0.00 | 12.47 | 74.83 | 12/NA | Avg. | 0% | (0.00) | 74.83 |
| 11. Chimney flashing - large (32" x 60") - copper | | | | | | | | | | |
| | 1.00 EA | 938.57 | 32.31 | 194.18 | 1,165.05 | 12/150 yrs | Avg. | 8% | (45.66) | 1,119.39 |
| 12. Step flashing | | | | | | | | | | |
| | 48.00 LF | 8.39 | 4.44 | 81.43 | 488.59 | 12/35 yrs | Avg. | 34.29% | (26.86) | 461.73 |
| 13. Asphalt starter - universal starter course | | | | | | | | | | |
| | 351.40 LF | 1.88 | 12.23 | 134.57 | 807.43 | 12/20 yrs | Avg. | 60% | (129.63) | 677.80 |

FISHEL-BRN_HPAC_EST1

12/2/2020

Page: 2

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## CONTINUED - Roof1

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 14. Valley metal | | | | | | | | | | |
| | 127.49 LF | 5.04 | 15.53 | 131.62 | 789.69 | 12/35 yrs | Avg. | 34.29% | (94.05) | 695.64 |
| 15. Ridge cap - composition shingles | | | | | | | | | | |
| | 256.24 LF | 3.63 | 15.99 | 189.23 | 1,135.37 | 12/25 yrs | Avg. | 48% | (135.60) | 999.77 |
| 16. Exhaust cap - through roof - 6" to 8" | | | | | | | | | | |
| | 2.00 EA | 98.33 | 4.11 | 40.15 | 240.92 | 12/35 yrs | Avg. | 34.29% | (24.87) | 216.05 |
| 17. Gutter guard - one piece seamless gutter system | | | | | | | | | | |
| | 210.33 LF | 30.02 | 198.00 | 1,302.42 | 7,814.53 | 12/20 yrs | Avg. | 60% | (2,098.85) | 5,715.67 |
| One Piece Gutter/ Leaf Guard | | | | | | | | | | |
| 18. Gutter / downspout - aluminum - up to 5" | | | | | | | | | | |
| | 200.00 LF | 7.41 | 36.24 | 303.65 | 1,821.89 | 12/25 yrs | Avg. | 48% | (307.32) | 1,514.57 |
| Downspouts | | | | | | | | | | |
| 19. Gable cornice return - laminated | | | | | | | | | | |
| | 3.00 EA | 95.09 | 1.06 | 57.27 | 343.59 | 12/30 yrs | Avg. | 40% | (7.46) | 336.14 |
| 20. Gable cornice return - laminated - 2 stories or greater | | | | | | | | | | |
| | 3.00 EA | 112.81 | 1.06 | 67.90 | 407.38 | 12/30 yrs | Avg. | 40% | (7.46) | 399.92 |
| 21. Gable cornice strip - laminated | | | | | | | | | | |
| | 15.00 LF | 14.19 | 2.86 | 43.14 | 258.85 | 12/30 yrs | Avg. | 40% | (20.22) | 238.63 |
| 22. Gable cornice strip - laminated - 2 stories or greater | | | | | | | | | | |
| | 8.00 LF | 16.50 | 1.53 | 26.71 | 160.23 | 12/30 yrs | Avg. | 40% | (10.79) | 149.44 |
| 23. Residential Supervision / Project Management - per hour | | | | | | | | | | |
| | 16.00 HR | 65.13 | 0.00 | 208.42 | 1,250.50 | 0/NA | Avg. | 0% | (0.00) | 1,250.50 |

*Labor is to analyze, design, and install a fall protection system following OSHA guidelines from the "Fall Protection for the Construction Industry, Code of Federal Regulations 1926, Subpart M", and as Safety Monitor System*

| | QUANTITY | UNIT | TAX | O&P | RCV | | | | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | 574.59 | 5,911.77 | 35,470.61 | | | | | 4,789.40 | 30,681.21 |

## Framing

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 24. 2" x 8" x 12' #2 & better Fir / Larch (material only) | | | | | | | | | | |
| | 6.00 EA | 18.94 | 6.82 | 24.09 | 144.55 | 0/150 yrs | Avg. | 0% | (0.00) | 144.55 |
| 25. Sheathing - plywood - 3/8" | | | | | | | | | | |
| | 128.00 SF | 2.23 | 6.14 | 58.32 | 349.90 | 0/150 yrs | Avg. | 0% | (0.00) | 349.90 |
| 26. Sheathing - plywood - 1/2" CDX | | | | | | | | | | |
| | 96.00 SF | 2.93 | 6.16 | 57.49 | 344.93 | 0/150 yrs | Avg. | 0% | (0.00) | 344.93 |

FISHEL-BRN_HPAC_EST1

12/2/2020

Page: 3

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## CONTINUED - Framing

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 27.  Soffit - box framing - 2' overhang | | | | | | | | | |
| 32.00 LF | 9.20 | 3.30 | 59.54 | 357.24 | 0/150 yrs | Avg. | 0% | (0.00) | 357.24 |
| 28.  Fascia - 1" x 8" - #1 pine | | | | | | | | | |
| 64.00 LF | 7.46 | 8.22 | 97.13 | 582.79 | 0/75 yrs | Avg. | 0% | (0.00) | 582.79 |
| 29.  Crown molding - wood - 5 1/4" | | | | | | | | | |
| 32.00 LF | 12.58 | 13.84 | 83.28 | 499.68 | 0/75 yrs | Avg. | 0% | (0.00) | 499.68 |
| 30.  Soffit - wood | | | | | | | | | |
| 64.00 SF | 5.59 | 6.41 | 72.83 | 437.01 | 0/150 yrs | Avg. | 0% | (0.00) | 437.01 |
| 31.  Soffit vent | | | | | | | | | |
| 4.00 EA | 56.61 | 0.86 | 45.46 | 272.76 | 0/150 yrs | Avg. | 0% | (0.00) | 272.76 |
| 32.  Carpenter - General Framer - per hour | | | | | | | | | |
| 16.00 HR | 82.30 | 0.00 | 263.36 | 1,580.16 | 0/NA | Avg. | 0% | (0.00) | 1,580.16 |
| Additional Labor to reconstruct framing and soffit from high lift | | | | | | | | | |
| 33.  Blown-in insulation - 14" depth - R38 | | | | | | | | | |
| 200.00 SF | 2.51 | 10.08 | 102.42 | 614.50 | 0/150 yrs | Avg. | 0% | (0.00) | 614.50 |
| **Totals:  Framing** | | **61.84** | **863.92** | **5,183.52** | | | | **0.00** | **5,183.52** |
| **Total:  ROOF** | | **636.43** | **6,775.69** | **40,654.13** | | | | **4,789.40** | **35,864.73** |

## Law & Ordinance



**Roof1**

| | |
|---|---|
| 3120.01  Surface Area | 31.20  Number of Squares |
| 351.40  Total Perimeter Length | 68.96  Total Ridge Length |
| 187.28  Total Hip Length | |

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 34.  Temporary toilet (per month) | | | | | | | | | |
| 1.00 MO | 106.15 | 0.00 | 21.23 | 127.38 | 0/NA | Avg. | 0% | (0.00) | 127.38 |
| 35.  Drip edge/gutter apron | | | | | | | | | |
| 351.40 LF | 2.53 | 18.98 | 181.60 | 1,089.62 | 0/35 yrs | Avg. | 0% | (0.00) | 1,089.62 |
| 36.  Continuous ridge vent - shingle-over style | | | | | | | | | |
| 68.96 LF | 7.87 | 13.90 | 111.32 | 667.95 | 0/35 yrs | Avg. | 0% | (0.00) | 667.95 |

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

### CONTINUED - Roof1

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| **R806.1 Ventilation required.** | | | | | | | | | | |
| **R806.2 Minimum vent area.** | | | | | | | | | | |
| 37. Roofer - per hour | | | | | | | | | | |
| | 3.00 HR | 116.02 | 0.00 | 69.61 | 417.67 | 0/NA | Avg. | 0% | (0.00) | 417.67 |
| To cut for Ridge Vent Addition | | | | | | | | | | |
| **R806.1 Ventilation required.** | | | | | | | | | | |
| **R806.2 Minimum vent area.** | | | | | | | | | | |
| **Totals: Roof1** | | | **32.88** | **383.77** | **2,302.62** | | | | **0.00** | **2,302.62** |
| **Total: Law & Ordinance** | | | **32.88** | **383.77** | **2,302.62** | | | | **0.00** | **2,302.62** |

### Interior



**Bedroom**      **Height: 8'**

| | |
|---|---|
| 400.00 SF Walls | 156.00 SF Ceiling |
| 556.00 SF Walls & Ceiling | 156.00 SF Floor |
| 17.33 SY Flooring | 50.00 LF Floor Perimeter |
| 50.00 LF Ceil. Perimeter | |

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| Measurements and Photos of Interior Damages Provided by the Insured-- Minimal Contact Covid19 | | | | | | | | | | |
| 38. Contents - move out then reset | | | | | | | | | | |
| | 1.00 EA | 49.84 | 0.00 | 9.97 | 59.81 | 0/NA | Avg. | 0% | (0.00) | 59.81 |
| 39. Drywall Repair - Minimum Charge - Labor and Material | | | | | | | | | | |
| | 1.00 EA | 343.04 | 0.90 | 68.79 | 412.73 | 0/NA | Avg. | 0% | (0.00) | 412.73 |
| 40. Mask and prep for paint - tape only (per LF) | | | | | | | | | | |
| | 50.00 LF | 0.57 | 0.12 | 5.72 | 34.34 | 0/15 yrs | Avg. | 0% | (0.00) | 34.34 |
| 41. Seal/prime then paint the walls and ceiling twice (3 coats)* | | | | | | | | | | |
| | 556.00 SF | 1.17 | 8.67 | 131.84 | 791.03 | 2/15 yrs | Avg. | 13.33% | (20.43) | 770.60 |
| 42. Floor protection - plastic and tape - 10 mil | | | | | | | | | | |
| | 156.00 SF | 0.28 | 1.03 | 8.94 | 53.65 | 0/15 yrs | Avg. | 0% | (0.00) | 53.65 |
| **Totals: Bedroom** | | | **10.72** | **225.26** | **1,351.56** | | | | **20.43** | **1,331.13** |
| **Total: Interior** | | | **10.72** | **225.26** | **1,351.56** | | | | **20.43** | **1,331.13** |

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

### Exterior

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 43.  Tree Removal Invoice (Bid Item)* | | | | | | | | | |
| 1.00 EA | 9,400.01 | 0.00 | 1,880.00 | 11,280.01 | 0/NA | Avg. | 0% | (0.00) | 11,280.01 |
| Sentinel Exteriors Invoice | | | | | | | | | |
| 44.  Tarp -emergency roof tarp* | | | | | | | | | |
| 1.00 EA | 500.00 | 0.01 | 100.00 | 600.02 | 0/NA | Avg. | 0% | (0.00) | 600.02 |
| Sentinel Exteriors Invoice | | | | | | | | | |
| 45.  Prime & paint exterior fascia - wood, 6"- 8" wide | | | | | | | | | |
| 634.50 LF | 1.99 | 7.61 | 254.05 | 1,524.33 | 0/15 yrs | Avg. | 0% | (0.00) | 1,524.33 |
| 46.  Paint crown molding - two coats | | | | | | | | | |
| 317.25 LF | 1.41 | 2.47 | 89.96 | 539.75 | 0/15 yrs | Avg. | 0% | (0.00) | 539.75 |
| 47.  Mask and prep for paint - paper and tape (per LF) | | | | | | | | | |
| 317.25 LF | 0.75 | 0.95 | 47.78 | 286.67 | 0/15 yrs | Avg. | 0% | (0.00) | 286.67 |
| 48.  Prime & paint exterior soffit - wood | | | | | | | | | |
| 317.25 SF | 2.07 | 7.04 | 132.75 | 796.50 | 0/15 yrs | Avg. | 0% | (0.00) | 796.50 |
| 49.  Painter - per hour | | | | | | | | | |
| 16.00 HR | 70.00 | 0.00 | 224.00 | 1,344.00 | 0/15 yrs | Avg. | 0% | (0.00) | 1,344.00 |
| Additional Labor to paint soffit fascia only | | | | | | | | | |
| 50.  Brick mold - paint grade softwood - finger jointed | | | | | | | | | |
| 16.00 LF | 2.71 | 1.32 | 8.94 | 53.61 | 0/150 yrs | Avg. | 0% | (0.00) | 53.61 |
| 51.  Paint door/window trim & jamb - 2 coats (per side) | | | | | | | | | |
| 1.00 EA | 29.16 | 0.25 | 5.88 | 35.29 | 0/15 yrs | Avg. | 0% | (0.00) | 35.29 |
| 52.  Welded-wire mesh fence - 4' high - 12 gauge | | | | | | | | | |
| 80.00 LF | 8.86 | 14.54 | 144.67 | 868.01 | 0/12 yrs | Avg. | 0% | (0.00) | 868.01 |
| 4 sections-- 24', 16', 16' 24' | | | | | | | | | |
| 53.  Post & rail fence - 3 rail - cedar or equal | | | | | | | | | |
| 80.00 LF | 21.91 | 61.34 | 362.83 | 2,176.97 | 0/12 yrs | Avg. | 0% | (0.00) | 2,176.97 |
| 4 sections-- 24', 16', 16' 24' | | | | | | | | | |
| 54.  Block wall - decorative - retaining (Bid Item) | | | | | | | | | |
| 1.00 EA | | | | | 0/NA | Avg. | 0% | | OPEN ITEM |
| Repair/ Replace Awaiting Bids | | | | | | | | | |
| **Totals:  Exterior** | | **95.55** | **3,250.86** | **19,505.17** | | | | **0.00** | **19,505.17** |

### General

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 55.  Boom lift - 50'-60' reach (per week) | | | | | | | | | |
| 2.00 WK | 1,253.38 | 0.00 | 501.35 | 3,008.11 | 0/NA | Avg. | 0% | (0.00) | 3,008.11 |

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## CONTINUED - General

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 56. HEAVY EQUIPMENT | | | | | | | | | | |
| | 1.00 EA | 300.00 | 2.70 | 60.54 | 363.24 | 0/NA | Avg. | 0% | (0.00) | 363.24 |
| Delivery and Pickup of Boom Lift | | | | | | | | | | |
| 57. Engineering fees (Bid Item) | | | | | | | | | | |
| | 1.00 EA | 1,500.00 | 0.00 | 300.00 | 1,800.00 | 0/NA | Avg. | 0% | (0.00) | 1,800.00 |
| Inspect for Structural Damages from Tree Impact | | | | | | | | | | |
| 58. Tandem axle dump trailer - per load - including dump fees | | | | | | | | | | |
| | 1.00 EA | 207.16 | 0.00 | 41.43 | 248.59 | 0/NA | Avg. | NA | (0.00) | 248.59 |
| **Totals: General** | | | **2.70** | **903.32** | **5,419.94** | | | | **0.00** | **5,419.94** |

### Labor Minimums Applied

| | QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|---|
| 59. General labor - labor minimum | | | | | | | | | | |
| | 1.00 EA | 5.03 | 0.00 | 1.01 | 6.04 | 0/NA | Avg. | 0% | (0.00) | 6.04 |
| 60. Finish carpentry labor minimum | | | | | | | | | | |
| | 1.00 EA | 161.07 | 0.00 | 32.21 | 193.28 | 0/NA | Avg. | 0% | (0.00) | 193.28 |
| **Totals: Labor Minimums Applied** | | | **0.00** | **33.22** | **199.32** | | | | **0.00** | **199.32** |
| **Line Item Totals: Property** | | | **778.28** | **11,572.12** | **69,432.74** | | | | **4,809.83** | **64,622.92** |

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

| Additional Charges | Charge |
|---|---|
| Project Manager | 1,677.55 |
| **Additional Charges Total** | **$1,677.55** |

FISHEL-BRN_HPAC_EST1

Copy from re:SearchGA

 **Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 400.00 | SF Walls | 156.00 | SF Ceiling | 556.00 | SF Walls and Ceiling |
| 156.00 | SF Floor | 17.33 | SY Flooring | 50.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 50.00 | LF Ceil. Perimeter |
| 156.00 | Floor Area | 173.11 | Total Area | 400.00 | Interior Wall Area |
| 20,484.97 | Exterior Wall Area | 52.67 | Exterior Perimeter of Walls | | |
| 6,240.02 | Surface Area | 62.40 | Number of Squares | 702.81 | Total Perimeter Length |
| 137.92 | Total Ridge Length | 374.55 | Total Hip Length | | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 67,130.13 | 96.68% | 64,261.11 | 96.44% |
| ICC | 2,302.61 | 3.32% | 2,374.85 | 3.56% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 69,432.74 | 100.00% | 66,635.96 | 100.00% |

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 55,196.37 |
| Project Manager | 1,617.35 |
| Material Sales Tax | 745.40 |
| Subtotal | 57,559.12 |
| Overhead | 5,755.91 |
| Profit | 5,755.91 |
| **Replacement Cost Value** | **$69,070.94** |
| Less Depreciation | (4,809.83) |
| **Actual Cash Value** | **$64,261.11** |
| **Net Claim** | **$64,261.11** |
| Total Recoverable Depreciation | 4,809.83 |
| **Net Claim if Depreciation is Recovered** | **$69,070.94** |

Matthew Hunter
Public Insurance Adjuster

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## Summary for ICC

| | |
|---|---:|
| Line Item Total | 1,885.97 |
| Project Manager | 60.20 |
| Material Sales Tax | 32.88 |
| Subtotal | 1,979.05 |
| Overhead | 197.90 |
| Profit | 197.90 |
| **Replacement Cost Value** | **$2,374.85** |
| **Net Claim** | **$2,374.85** |

Matthew Hunter
Public Insurance Adjuster

The insured(s) reserve all rights he/she/they may have under the insurance policy, including, but not limited to, supplementing the claim/or filing additional damage claims, should cause arise. This Estimate does not address hidden damages and does not include any unknown damages or complications or additional costs that may be associated with any repair/replacement of the damages to the insured property.

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



1        1-IMG_2123                    Date Taken: 10/29/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



2        2-IMG_2124                    Date Taken: 10/29/2020

Copy from re:SearchGA

 **Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



3      3-img_
       180093C674B849D0AB60C4A44A
       933432

Copy from re:SearchGA

 **Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



4      4-PA300058                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



5        5-PA300059                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



6        6-PA300060                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



7        7-PA300073                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



8       8-PA300080                 Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



9       9-PA300090                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



10      10-PA300092              Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



11      11-PA300096                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



12      12-PA300099                    Date Taken: 10/30/2020

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403



13      13-PA300102                    Date Taken: 10/30/2020

Copy from re:SearchGA



Law & Ordinance

12/2/2020                    Page: 25



Law & Ordinance

Copy from re:SearchGA

FISHEL-BRN_HPAC_EST1

N

12' 8"

12'

13' 8"

13'

Bedroom

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## Sketch Roof Annotations

### ROOF

| Face | Square Feet | Number of Squares | Slope - Rise / 12 |
|------|-------------|-------------------|-------------------|
| F1 | 12.22 | 0.12 | 8.43 |
| F2 | 4.26 | 0.04 | 10.82 |
| F3 | 4.21 | 0.04 | 10.82 |
| F4 | 98.90 | 0.99 | 9.82 |
| F5 | 3.50 | 0.03 | 11.95 |
| F6 | 458.51 | 4.59 | 9.46 |
| F8 | 15.80 | 0.16 | 9.89 |
| F9 | 3.01 | 0.03 | 12.74 |
| F10 | 201.33 | 2.01 | 9.89 |
| F11 | 2.14 | 0.02 | 12.38 |
| F12 | 134.60 | 1.35 | 9.89 |
| F13 | 252.68 | 2.53 | 9.30 |
| F14 | 3.50 | 0.03 | 11.95 |
| F15 | 99.06 | 0.99 | 9.82 |
| F17 | 344.84 | 3.45 | 9.89 |
| F18 | 242.01 | 2.42 | 9.35 |
| F19 | 56.87 | 0.57 | 9.60 |
| F20 | 22.87 | 0.23 | 10.21 |
| F21 | 68.21 | 0.68 | 9.60 |
| F22 | 22.87 | 0.23 | 10.21 |
| F23 | 59.64 | 0.60 | 9.35 |
| F24 | 740.30 | 7.40 | 9.30 |
| F25 | 59.90 | 0.60 | 9.35 |
| F26 | 28.18 | 0.28 | 9.33 |
| F27 | 110.26 | 1.10 | 8.68 |
| F28 | 40.30 | 0.40 | 10.01 |
| F29 | 28.19 | 0.28 | 9.33 |
| F30 | 1.85 | 0.02 | 12.38 |
| **Estimated Total:** | **3,120.01** | **31.20** | |

### Law & Ordinance

| Face | Square Feet | Number of Squares | Slope - Rise / 12 |
|------|-------------|-------------------|-------------------|
| F1 | 12.22 | 0.12 | 8.43 |
| F2 | 4.26 | 0.04 | 10.82 |
| F3 | 4.21 | 0.04 | 10.82 |
| F4 | 98.90 | 0.99 | 9.82 |
| F5 | 3.50 | 0.03 | 11.95 |
| F6 | 458.51 | 4.59 | 9.46 |
| F8 | 15.80 | 0.16 | 9.89 |
| F9 | 3.01 | 0.03 | 12.74 |

Copy from re:SearchGA



**Hunter Public Adjusting Corp**

404 Billings Farm Drive, Canton GA 30115
Ph. 404.323.6846
Email: Claims@GoHPAC.com
PIA License # 3252220
Tax Id # 83-3752403

## Law & Ordinance - Continued

| Face | Square Feet | Number of Squares | Slope - Rise / 12 |
|------|-------------|-------------------|-------------------|
| F10 | 201.33 | 2.01 | 9.89 |
| F11 | 2.14 | 0.02 | 12.38 |
| F12 | 134.60 | 1.35 | 9.89 |
| F13 | 252.68 | 2.53 | 9.30 |
| F14 | 3.50 | 0.03 | 11.95 |
| F15 | 99.06 | 0.99 | 9.82 |
| F17 | 344.84 | 3.45 | 9.89 |
| F18 | 242.01 | 2.42 | 9.35 |
| F19 | 56.88 | 0.57 | 9.60 |
| F20 | 22.87 | 0.23 | 10.21 |
| F21 | 68.21 | 0.68 | 9.60 |
| F22 | 22.87 | 0.23 | 10.21 |
| F23 | 59.64 | 0.60 | 9.35 |
| F24 | 740.30 | 7.40 | 9.30 |
| F25 | 59.90 | 0.60 | 9.35 |
| F26 | 28.19 | 0.28 | 9.33 |
| F27 | 110.26 | 1.10 | 8.68 |
| F28 | 40.30 | 0.40 | 10.01 |
| F29 | 28.19 | 0.28 | 9.33 |
| F30 | 1.85 | 0.02 | 12.38 |
| **Estimated Total:** | **3,120.01** | **31.20** | |

Copy from re:SearchGA

## This page inserted to separate pleadings

E-FILED IN OFFICE - MX
TIANA P. GARNER
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**21-A-02388-3**
**3/30/2021 10:19 AM**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **BENJAMIN FISHEL-BROWN and** )<br>**STEPHANIE FISHEL-BROWN,** )<br> )<br>**Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**STATE FARM FIRE AND CASUALTY** )<br>**COMPANY,** )<br> **a foreign corporation,** )<br> )<br>**Defendant.** ) | **CIVIL ACTION FILE NO.:**<br>_____<br><br>**21-A-02388-3** |

### CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing upon the Defendant State Farm Fire and Casualty Company ("State Farm") by serving them with the ***Summons, Complaint and Exhibits***, as well as ***Plaintiffs' First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to the Defendant State Farm at the address listed below:

**Corporation Service Company**
**Registered Agent for Defendant State Farm**
**40 Technology Parkway South, Suite 300**
**Norcross, GA 30092**

Respectfully submitted, this the 30th day of March, 2 0 2 1.

For: The Huggins Law Firm, LLC

_____
J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Foster L. Peebles, Esq.
Georgia Bar No.: 410852
Attorneys for the Plaintiffs
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com

Copy from re:SearchGA

(e) mdturner@lawhuggins.com
(e) fpeebles@lawhuggins.com

Copy from re:SearchGA

## This page inserted to separate pleadings

E-FILED IN OFFICE - MX
TIANA P. GARNER
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**21-A-02388-3**

**3/30/2021 10:19 AM**

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Benjamin Fishel-Brown and**
**Stephanie Fishel-Brown**
602 Bentley Falls Ct.
Canton, GA 30114

**21-A-02388-3**

CIVIL ACTION NUMBER: _____

### PLAINTIFFS

### VS

**State Farm Fire and Casualty Company**
**RA: Corporation Service Company**
40 Technology Pkwy South, Suite 300
Norcross, GA 30092

### DEFENDANT

---

## SUMMONS

---

**TO THE ABOVE NAMED DEFENDANT**:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff(s) attorney, whose name and address is:

**MICHAEL D. TURNER**
**ATTORNEYS FOR THE PLAINTIFFS**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
770-913-6229
mdturner@lawhuggins.com

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **30TH** day of **MARCH**, 2 0 2 1.

Tiana P. Garner,
Clerk of Superior Court

BY: _____
Deputy Clerk

Copy from re:SearchGA

**This page inserted to separate pleadings**

E-FILED IN OFFICE - MB
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**21-A-02388-3**
**4/1/2021 2:37 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

**BENJAMIN FISHEL-BROWN and** )
**STEPHANIE FISHEL-BROWN,** )
    )
    Plaintiffs, )
    )   **CIVIL ACTION FILE NO.:**
v. )   **21-A-02388-3**
    )
**STATE FARM FIRE AND CASUALTY** )
**COMPANY,** )
**a foreign corporation,** )
    )
    Defendant. )

### AFFIDAVIT OF SERVICE

Personally appeared before the undersigned officer duly authorized to administer oaths, Chadd Wallace, who after first being duly sworn, deposes as follows:

My name is ⟨Chadd Wallace⟩. I am over the age of eighteen (18) and I am a citizen of the United States. I am not related to or employed by any party or attorney in this lawsuit and I am appointed to serve Process in this Court.

I hereby certify that on ⟨March 31st⟩, at ⟨1:33⟩, I served Defendant **State Farm Fire and Casualty Company** through its registered agent, Corporation Service Company, by leaving a service copy of the Summons, Complaint, and all exhibits at its place of business located at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

AFFIANT SAYETH NOT FURTHER this the ⟨31st⟩ day of ⟨March⟩, 2021.

_____
Process Server

Copy from re:SearchGA

E-FILED IN OFFICE - MB
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

21-A-02388-3

4/28/2021 2:13 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

BENJAMIN FISHEL-BROWN  )(
and STEPHANIE FISHEL-BROWN,  )(
                                   )(
        Plaintiffs,  )(
                                   )(    CIVIL ACTION FILE
v.  )(    NO. 21-A-02388-3
                                   )(
STATE FARM FIRE AND  )(
CASUALTY COMPANY,  )(
a foreign corporation,  )(
                                   )(
        Defendant.  )(

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
## ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW State Farm Fire and Casualty Company ("State Farm"), Defendant in the above-styled action and, by and through the undersigned counsel, files this Answer and Affirmative Defenses to Plaintiffs Benjamin Fishel-Brown and Stephanie Fishel-Brown's ("Plaintiffs'") Complaint, showing this Court as follows:

## FIRST AFFIRMATIVE DEFENSE

State Farm has not breached any duty owed, or contract with Plaintiffs and, therefore, Plaintiffs may not recover from State Farm in any sum or manner whatsoever.

## SECOND AFFIRMATIVE DEFENSE

State Farm is not indebted to Plaintiffs for the sum sought or in any amount whatsoever.

## THIRD AFFIRMATIVE DEFENSE

State Farm denies that the injuries and damages alleged in the Complaint were proximately caused by any conduct on the part of State Farm.

## FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to assert a breach of contract claim against State Farm for the loss which is the subject of Plaintiffs' Complaint, Plaintiffs' action should be dismissed because State Farm did not breach its contract with Plaintiffs and, at all times relevant to this action, acted in accordance with the terms and conditions of the policy number 11-EP-Y526-4 ("Policy") and all applicable Georgia law.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs waived their right to insist upon State Farm's compliance with the Policy due to their own failure to comply with the Policy terms and conditions.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' action is barred and they may not recover because Plaintiffs failed to comply with the Policy provisions before initiating this action. The Policy provides at **SECTION I – CONDITIONS**:

> …
>
> **6. Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.
> However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.
> ….

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from bringing suit against State Farm based upon the doctrines of waiver and estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and they may not recover due to their violation of the policy terms which state at **SECTION I – CONDITIONS**:

> 2. **Your Duties After Loss**. After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:
>
> a.  give immediate notice to **us** or **our** agent and also notify:

(1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.  protect the property from further damage or loss and also:

(1)  make reasonable and necessary temporary repairs required to protect the property; and

(2)  keep an accurate record of repair expenses;

c.  prepare an inventory of damaged or stolen personal property:

(1)  showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2)  attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d.  as often as *we* reasonably require:

(1)  exhibit the damaged property;

(2)  provide *us* with any requested records and documents and allow *us* to make copies;

(3)  while not in the presence of any other *insured*:

(a)  give statements; and

(b)  submit to examinations under oath; and

(4)  produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

e.  submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

(1)  the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; ....

Plaintiffs violated conditions 2.b. and 2.d.(2) and therefore cannot recover in this action.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs cannot recover the amounts claimed because the loss they alleged was not the result of a direct and accidental physical loss to the property located at 602 Bentley Falls Ct, Canton, Georgia 30114 ("Property").

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs cannot recover the damages set forth in their Complaint because the amount of said damages does not reflect the reasonable cost to replace and/or repair the damaged and covered property with equivalent construction for equivalent use and to return Plaintiffs to their pre-loss condition. The damages

sought in Plaintiffs' Complaint were for repairs that were not in accordance with the standard and custom of the industry.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to recover to the extent that Plaintiffs' alleged damages were not proximately caused by an act or occurrence which is a covered loss under the terms of the insurance contract. The Policy provides at **SECTION I – LOSSES NOT INSURED:**

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   ...

   g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   ...

   However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any

natural or external forces, or occurs as a result of any combination of these:

...

    d.  **Neglect**, meaning neglect of the ***insured*** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

...

3.  ***We*** will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, ***we*** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

...

    b.  defect, weakness, inadequacy, fault or unsoundness in:

        (1)  planning, zoning, development, surveying, siting;

        (2)  design, specifications, workmanship, construction, grading, compaction;

        (3)  materials used in construction or repair; or

        (4)  maintenance;

    of any property (including land, structures, or improvements of any kind) whether on or off the ***residence premises***; ....

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs may not recover from State Farm because the allegations in Plaintiffs' Complaint are not covered by the Policy terms. The Policy provides at **SECTION I AND II – CONDITIONS:**

...

12. **Right to Inspect**.

    a.   ***We*** have the right but are not obligated to perform the following:

        (1)  make inspections and surveys of the ***insured location*** at any time;

        (2)  provide ***you*** with reports on conditions ***we*** find; or

        (3)  recommend changes.

        Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

    b. ***We*** do not:

        (1)  make safety inspections;

        (2)  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

        (3)  warrant that conditions are safe or healthful; or

        (4)  warrant that conditions comply with laws, regulations, codes, or standards.

        This condition applies to ***us*** and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on ***our*** behalf.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim in their Complaint against State Farm for the alleged breach of any duty other than the duties created by the Policy that are the subject of Plaintiffs' Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek to assert a cause of action against State Farm based upon the breach of any duty other than those duties set forth in the Policy, Plaintiffs fail to state a claim upon which relief can be granted since Georgia law does not impose duties on State Farm other than those set forth in the Policy and Georgia law does not recognize any other cause of action aside from a breach of contract action for the allegations contained in Plaintiffs' Complaint. Moreover, at all times relevant thereto, State Farm acted in good faith and in accordance with the terms and conditions of the Policy.

## FIFTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to recover under O.C.G.A. § 33-4-6, Plaintiffs fails to state a claim under O.C.G.A. § 33-4-6 since State Farm acted reasonably and with probable cause in response to the claim asserted by Plaintiffs.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs assert any extra-contractual claims other than those permitted by O.C.G.A. § 33-4-6, Plaintiffs cannot recover because O.C.G.A. § 33-4-6 is the exclusive remedy for any alleged wrongful failure to pay an insurance claim.   Further, State Farm specifically denies any liability to Plaintiffs under O.C.G.A. § 33-4-6.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim with respect to any extra-contractual damages, including statutory and/or bad faith damages under O.C.G.A. § 13-6-11, O.C.G.A. § 33-4-6, O.C.G.A. § 51-12-5.1, or any other statutory or other cause of action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs' Complaint seeks damages under O.C.G.A. § 33-4-6, such damages are not available inasmuch as Plaintiffs failed to strictly comply with the statute and applicable law.  The Policy states:

### SECTION I – CONDITIONS

...

9.  **Loss Payment**. *We* will adjust all losses with *you*.  *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment.  Loss will be payable 60 days after *we* receive *your* proof of loss and:

a.  reach agreement with *you*;

b.  there is an entry of a final judgment; or

c.  there is a filing of an appraisal award with *us*.

Although the State Farm denies that Plaintiffs made a proper demand for payment as required by law, Plaintiffs' demand, if any, was made at a time when payment was not due.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim against State Farm for violation of the Unfair Settlement Practices (O.C.G.A. § 33-6-30) upon which relief can be granted.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek to establish a cause of action against State Farm based on the provisions of Georgia's Unfair Claims Settlement Practices Act contained in O.C.G.A. § 33-6-34, Plaintiffs fail to state a claim upon which relief could be granted.  By its express terms, the Unfair Claims Settlement Practices Act does not create a private cause of action. O.C.G.A. § 33-6-37.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The facts and circumstances forming the basis of Plaintiffs' Complaint were brought about by and as a result of Plaintiffs' own conduct and Plaintiffs, therefore, are estopped and precluded from recovery herein.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek damages against State Farm other than contractual damages or damages under O.C.G.A. § 33-4-6, such damages are not available to Plaintiffs inasmuch as State Farm owed Plaintiffs no duty independent of the State Farm Policy, Plaintiffs failed to allege the breach of duty independent

of the Policy, and Plaintiffs failed to allege harm independent of the failure to pay Plaintiffs' insurance claim.  Further, O.C.G.A. § 33-4-6 is the exclusive remedy available to Plaintiffs for any alleged failure to pay an insurance claim and State Farm specifically denies any liability to Plaintiffs under O.C.G.A. § 33-4-6.

<u>**TWENTY-THIRD AFFIRMATIVE DEFENSE**</u>

Plaintiffs are not entitled to recover any replacement cost benefits for the structural repairs to the Property because they did not comply with the provisions of the Policy regarding how to recover these benefits.  Specifically, the Policy provides at **SECTION I – LOSS SETTLEMENT**:

> Only the **Loss Settlement Provisions** shown in the ***Declarations*** apply. ***We*** will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and ***we*** will not pay, any amount for ***diminution in value***.
>
> **COVERAGE A – DWELLING**
>
> 1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**
>
>    a. ***We*** will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the ***Declarations***, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:
>
>       (1) until actual repair or replacement is completed, ***we*** will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(4) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b.  Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

Plaintiffs did not submit proof that any structural repairs to the Property were completed or that the replacement expenses were incurred.  Thus, Plaintiffs cannot recover replacement cost benefits.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

State Farm expressly reserves the right to assert any and all affirmative defense(s) and matter(s) in avoidance as may be disclosed during the course of additional investigation and discovery.  Subject to and without waiving any of its

other respective rights, State Farm responds to the specific averments contained in the individual and enumerated paragraphs of the Complaint as follows:

**1.**

Upon information and belief, State Farm admits the allegations contained in paragraph 1 of Plaintiffs' Complaint.

**2.**

In response to paragraph 2 of Plaintiffs' Complaint, State Farm admits that it transacts business and insures properties in the State of Georgia, subject to the terms and conditions of its policies and all applicable law.  In further response, State Farm admits that it has appointed a registered agent for service of process in Georgia and does not dispute subject matter jurisdiction of this Court. All other allegations contained in paragraph 2 of Plaintiffs' Complaint not admitted are denied.

## <u>JURISDICTION AND VENUE</u>

**3.**

In response to paragraph 3 of Plaintiffs' Complaint, State Farm admits that this Court has subject matter jurisdiction over this matter.  In further response to paragraph 3 of Plaintiffs' Complaint, State Farm specifically denies that this case involves a ". . . breach of contract and bad faith denial of [an] insurance

claim . . . [.]"   All   other   allegations   contained   in   paragraph   3   of Plaintiffs' Complaint not admitted are denied.

**4.**

In response to paragraph 4 of Plaintiffs' Complaint, State Farm admits that it does   not   dispute   venue   in   this   Court.   All   other   allegations   contained   in paragraph 4 of Plaintiffs' Complaint not admitted are denied.

**5.**

In response to paragraph 5 of Plaintiffs' Complaint, State Farm admits that it does   not   dispute   jurisdiction   and   venue   in   this   Court.   All   other   allegations contained in paragraph 5 of Plaintiffs' Complaint not admitted are denied.

## **THE POLICY**

**6.**

In response to paragraph 6 of Plaintiffs' Complaint, State Farm admits that it issued policy number 11-EP-Y526-4 to Plaintiffs for the property (dwelling and contents) located at 602 Bentley Falls Court in Canton, Georgia (the "Insured Property" or the "home").   In further response to paragraph 6, State Farm admits that the Policy insured against loss as defined by the terms and conditions of the Policy and all applicable law.   In further response to paragraph 6, State Farm admits that Exhibit A is a complete copy of the subject Policy and that the terms

and conditions of the Policy speak for themselves and any interpretation or characterization of the Policy terms and conditions to the contrary is expressly denied.  All other allegations contained in paragraph 6 of Plaintiffs' Complaint not admitted are denied.

**7.**

In response to paragraph 7 of Plaintiffs' Complaint, State Farm admits that a true and correct copy of the Policy is attached to Plaintiffs' Complaint as Exhibit A.  State Farm states that the terms and conditions of the Policy speak for themselves and that any interpretation or characterization of the Policy terms and conditions to the contrary is expressly denied.   The remaining allegations contained in paragraph 7 of Plaintiffs' Complaint are legal conclusions or argument to which no response is required.  To the extent a response is required, these allegations are denied.

**8.**

In response to paragraph 8 of Plaintiffs' Complaint, State Farm admits that a true and correct copy of the Policy is attached to Plaintiffs' Complaint as Exhibit A.  State Farm states that the terms and conditions of the Policy speak for themselves and that any interpretation or characterization of the Policy terms and conditions to the contrary is expressly denied.   The remaining allegations

contained in paragraph 8 of Plaintiffs' Complaint are legal conclusions or argument to which no response is required. To the extent a response is required, these allegations are denied.

## STORM DAMAGE TO THE INSURED PROPERTY

**9.**

In response to paragraph 9 of Plaintiffs' Complaint, State Farm admits that, on October 29, 2020, the Policy was in effect subject, however, to all terms and conditions of the Policy and all applicable law. All other allegations contained in paragraph 9 of Plaintiffs' Complaint not herein admitted are denied.

**10.**

In response to paragraph 10 of Plaintiffs' Complaint, State Farm admits that it received timely notice of an alleged weather-related incident ("Loss") that Plaintiffs alleged caused damage to the Property for which Plaintiffs intended to make a claim under the Policy. In further response to paragraph 10, State Farm admits that it assigned an adjuster the evaluate Plaintiffs' claim. The remaining allegations contained in paragraph 10 of Plaintiffs' Complaint contain legal conclusions or argument to which no response is required. To the extent a response is required, these allegations are denied.

**11.**

State Farm denies the allegations contained in paragraph 11 as stated. State Farm admits that it inspected Plaintiffs' Property with Plaintiffs' consent. State Farm denies the remaining allegations contained in paragraph 11 of Plaintiffs' Complaint.

**12.**

State Farm denies the allegations contained in paragraph 12 as stated. State Farm admits that, at various times, it examined Plaintiffs' Property following notice of the Loss. State Farm denies all other allegations contained in paragraph 12 of Plaintiffs' Complaint.

**13.**

The allegations contained in paragraph 13 of Plaintiffs' Complaint are legal conclusions and/or argument to which no response is required. To the extent that a response is required, State Farm denies the allegations contained in paragraph 13 of Plaintiffs' Complaint.

**14.**

In response to paragraph 14 of Plaintiffs' Complaint, State Farm admits that a true and correct copy of its March 8, 2021 estimate of repair costs is attached to Plaintiffs' Complaint as Exhibit B. The content of Exhibit B speaks for itself. The

remaining allegations contained in paragraph 14 of Plaintiffs' Complaint are legal conclusions and/or argument to which no response is required.  To the extent that a response is required, State Farm denies all other allegations contained in paragraph 14 of Plaintiffs' Complaint.

**15.**

The allegations contained in paragraph 15 of Plaintiffs' Complaint are legal conclusions and/or argument to which no response is required.  To the extent that a response is required, State Farm denies the allegations contained in paragraph 15 of Plaintiffs' Complaint.

**16.**

In response to paragraph 16 of Plaintiffs' Complaint, State Farm admits that a true and correct copy of Plaintiffs' January 4, 2021 letter is attached to Plaintiffs' Complaint as Exhibit C.  The content of Exhibit C speaks for itself.  The remaining allegations contained in paragraph 16 of Plaintiffs' Complaint are legal conclusions and/or argument to which no response is required.  To the extent that a response is required, State Farm denies all other allegations contained in paragraph 16 of Plaintiffs' Complaint.

**17.**

In response to paragraph 17 of Plaintiffs' Complaint, State Farm admits that a true and correct copy of Plaintiffs' January 4, 2021 letter is attached to Plaintiffs' Complaint as Exhibit C. The content of Exhibit C speaks for itself.  The remaining allegations contained in paragraph 17 of Plaintiffs' Complaint are legal conclusions and/or argument to which no response is required.  To the extent that a response is required, State Farm denies all other allegations contained in paragraph 17 of Plaintiffs' Complaint.

**18.**

State Farm denies the allegations contained in paragraph 18 of Plaintiffs' Complaint.

**19.**

State Farm denies the allegations contained in paragraph 19 of Plaintiffs' Complaint.

**20.**

State Farm denies the allegations contained in paragraph 20 of Plaintiffs' Complaint.

**21.**

State Farm denies the allegations contained in paragraph 21 of Plaintiffs' Complaint.

## <u>COUNT I: BREACH OF CONTRACT</u>

**22.**

State Farm hereby incorporates by reference its answers to Paragraphs 1 through 21 as if each were fully set forth herein.

**23.**

State Farm denies the allegations contained in paragraph 23 of Plaintiffs' Complaint.

**24.**

State Farm denies the allegations contained in paragraph 24 of Plaintiffs' Complaint.

**25.**

State Farm denies the allegations contained in paragraph 25 of Plaintiffs' Complaint.

**26.**

State Farm denies the allegations contained in paragraph 26 of Plaintiffs' Complaint.

**27.**

State Farm denies the allegations contained in paragraph 27 of Plaintiffs' Complaint.

**28.**

State Farm denies the allegations contained in paragraph 28 of Plaintiffs' Complaint.

**29.**

State Farm denies the allegations contained in paragraph 29 of Plaintiffs' Complaint.

**30.**

State Farm denies the allegations contained in paragraph 30 of Plaintiffs' Complaint.

**31.**

Paragraph 31 of Plaintiffs' Complaint contains legal conclusions or argument to which no response is required. To the extent a response is required, State Farm denies paragraph 31 of Plaintiffs' Complaint.

## COUNT II: BAD FAITH

**32.**

State Farm hereby incorporates by reference its answers to Paragraphs 1 through 31 as if each were fully set forth herein.

**33.**

State Farm denies the allegations contained in paragraph 33 of Plaintiffs' Complaint.

**34.**

State Farm denies the allegations contained in paragraph 34 of Plaintiffs' Complaint, including all subparts.

**35.**

State Farm denies the allegations contained in paragraph 35 of Plaintiffs' Complaint.

**36.**

State Farm denies the allegations contained in paragraph 36 of Plaintiffs' Complaint.

**37.**

State Farm denies the allegations contained in paragraph 37 of Plaintiffs' Complaint.

**38.**

State Farm denies the allegations contained in paragraph 38 of Plaintiffs' Complaint.

**39.**

State Farm denies the allegations contained in paragraph 39 of Plaintiffs' Complaint.

**40.**

State Farm denies the allegations contained in paragraph 40 of Plaintiffs' Complaint.

**41.**

State Farm denies the allegations contained in paragraph 41 of Plaintiffs' Complaint.

**42.**

State Farm denies the allegations contained in paragraph 42 of Plaintiffs' Complaint.

## <u>COUNT III: ATTORNEY'S FEES</u>

**43.**

State Farm hereby incorporates by reference its answers to Paragraphs 1 through 42 as if each were fully set forth herein.

**44.**

State Farm denies the allegations contained in paragraph 44 of Plaintiffs' Complaint.

**45.**

State Farm denies the allegations contained in paragraph 45 of Plaintiffs' Complaint.

## DEMAND FOR JURY TRIAL

**46.**

The allegations contained in paragraph 46 of Plaintiffs' Complaint do not require a response from State Farm. To the extent any response is due, State Farm denies the allegations contained in paragraph 46 of Plaintiffs' Complaint.

## PRAYER FOR RELIEF

**47.**

State Farm denies the allegations contained in paragraph 47 of Plaintiffs' Complaint, including all subparts.

## GENERAL DENIAL

**48.**

State Farm denies each and every remaining allegation of the Complaint not specifically and expressly admitted herein.

WHEREFORE, having fully answered the Complaint, State Farm prays that the Complaint be dismissed with prejudice, that each and every prayer for relief in the Complaint be denied, that judgment be entered in favor of State Farm with costs cast upon Plaintiffs, and that State Farm be awarded such other and further relief as this Court may deem just and proper.

Respectfully submitted this 28th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Kristen M. Vigilant*
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
***Attorneys for Defendant State Farm Fire and Casualty Company***

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have electronically filed the foregoing *Defendant State Farm Fire and Casualty Company's Answer and Affirmative Defenses* with the Clerk of Court using the Odyssey E-FileGA system which will automatically send e-mail notification of such filing to counsel of record:

J. Remington Huggins, Esq.
Michael D. Turner, Esq.
Foster L. Peebles, Esq.
Huggins Law Firm LLC
110 Norcross Street
Roswell, Georgia 30075
remington@lawhuggins.com
mdturner@lawhuggins.com
fpeebles@lawhuggins.com
*Attorneys for Plaintiffs*

This 28th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Kristen M. Vigilant*
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
*Attorneys for Defendant State Farm Fire and Casualty Company*

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

# This page inserted to separate pleadings

E-FILED IN OFFICE - MB
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
21-A-02388-3
4/29/2021 8:30 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

|                              |    |                    |
|------------------------------|----|--------------------|
| BENJAMIN FISHEL-BROWN        | )( |                    |
| and STEPHANIE FISHEL-BROWN,  | )( |                    |
|                              | )( |                    |
| Plaintiffs,                  | )( |                    |
|                              | )( | CIVIL ACTION FILE  |
| v.                           | )( | NO. 21-A-02388-3   |
|                              | )( |                    |
| STATE FARM FIRE AND          | )( |                    |
| CASUALTY COMPANY,            | )( |                    |
| a foreign corporation,       | )( |                    |
|                              | )( |                    |
| Defendant.                   | )( |                    |

## NOTICE OF FILING REMOVAL

TO:   J. Remington Huggins, Esq.
      Michael D. Turner, Esq.
      Foster L. Peebles, Esq.
      Huggins Law Firm LLC
      110 Norcross Street
      Roswell, Georgia 30075

Please take notice that State Farm Fire and Casualty Company, Defendant in

the above-styled action, has on this date filed its Notice of Removal, a copy of

which is attached hereto as Exhibit 1, in the Office of the Clerk of the United

States District Court for the Northern District of Georgia, Atlanta Division.

This 29th day of April, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Kristen M. Vigilant*

Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
***Attorneys for Defendant State Farm Fire and Casualty Company***

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I have electronically filed the foregoing *Notice of Filing Removal* with the Clerk of Court using the Odyssey E-FileGA system which will automatically send e-mail notification of such filing to counsel of record:

J. Remington Huggins, Esq.
Michael D. Turner, Esq.
Foster L. Peebles, Esq.
Huggins Law Firm LLC
110 Norcross Street
Roswell, Georgia 30075
remington@lawhuggins.com
mdturner@lawhuggins.com
fpeebles@lawhuggins.com
*Attorneys for Plaintiffs Benjamin Fishel-Brown and*
*Stephanie Fishel-Brown*

This 29th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Kristen M. Vigilant*
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
***Attorneys for Defendant State Farm***
***Fire and Casualty Company***

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

# EXHIBIT

# 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

BENJAMIN FISHEL-BROWN )(
and STEPHANIE FISHEL-BROWN, )(
            )(
      Plaintiffs, )( CIVIL ACTION FILE
            )( NO. _____
    v. )( [On removal from Superior Court
            )( Court of Gwinnett County, Civil
STATE FARM FIRE AND )( Action File No. 21-A-02388-3]
CASUALTY COMPANY, )(
a foreign corporation, )(
            )(
      Defendant. )(

## NOTICE OF REMOVAL

COMES NOW State Farm Fire and Casualty Company ("State Farm"), Defendant in the above-styled action, and hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446, respectfully showing this Court as follows:

1.

On March 30, 2021, Benjamin and Stephanie Fishel-Brown ("Plaintiffs") filed a Complaint against State Farm in the Superior Court of Gwinnett County, Georgia, styled as *Benjamin Fishel-Brown and Stephanie Fishel-Brown v. State Farm Fire and Casualty Company*, and assigned CAFN 21-A-02388-3 (the

"Superior Court Action").  True and correct copies of all filings to date in the Superior Court action are collectively attached hereto as **Exhibit "1"**.

2.

The Complaint and Summons in this action were served upon State Farm on March 31, 2021.  This Notice of Removal is filed within thirty days of March 31, 2021, the date on which State Farm first received the Complaint and notice of the subject lawsuit.  This Notice of Removal is also filed within one year of the commencement of the action.   Thus, removal is timely under 28 U.S.C. § 1446(b).

3.

The United States District Court for the Northern District of Georgia, Atlanta Division, embraces Gwinnett County, Georgia.  Thus, removal to this Court is proper under 28 U.S.C. § 1441(a).

4.

Pursuant to 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, State Farm will give written notice to Plaintiff by notifying her attorney of record, Remington Huggins, Esq. of Huggins Law Firm, LLC, and will file a copy of this Notice of Removal with the Clerk of Superior Court of Gwinnett County, which shall effect the removal.

## DIVERSITY JURISDICTION

5.

This Court possesses diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

6.

Upon information and belief, Plaintiffs were residents of Georgia on the date that the Complaint was filed.  Thus, Plaintiffs are citizens of the State of Georgia.

7.

State Farm is a corporation organized under the laws of the State of Illinois, with its principal place of business in the State of Illinois.  Thus, State Farm is a citizen of the State of Illinois.

8.

Because Plaintiffs and State Farm are citizens of different States, complete diversity exists between Plaintiffs and State Farm in accordance with 28 U.S.C. § 1332(a)(1).

9.

In Plaintiffs' Complaint, Plaintiffs seek recovery of insurance proceeds allegedly owed under a policy of insurance for damage to real property located at 602 Bentley Falls Court in Canton, Georgia.  *See generally* Dkt. 1-1, Complaint.

Plaintiffs assert a claim against State Farm for breach of contract, bad faith, and attorneys' fees.  According to the Plaintiff, the damages to the subject property were $71,445.79.  Dkt. 1-1, Complaint, ¶ 16.  Accordingly, and including penalty (50%) under O.C.G.A. § 33-4-6, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

10.

Venue is proper in this Court for purposes of removal under 28 U.S.C. § 1441(a), but not necessarily for purposes of 28 U.S.C. § 1391 or any other applicable venue provision.  By filing this Notice of Removal, State Farm does not waive any of its jurisdictional objections or affirmative defenses.

Respectfully submitted this 29th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Kristen M. Vigilant*
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
***Attorneys for Defendant State Farm Fire and Casualty Company***

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## <u>LOCAL RULE 5.1C CERTIFICATION</u>

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1C.

Respectfully submitted this 29th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Kristen M. Vigilant*
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
***Attorneys for Defendant State Farm Fire and Casualty Company***

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## **CERTIFICATE OF SERVICE**

*We hereby certify that we electronically filed the foregoing Notice of Removal* with the Clerk of Court via the CM/ECF system, through which the Court will send notification to the following attorneys:

J. Remington Huggins, Esq.
Michael D. Turner, Esq.
Foster L. Peebles, Esq.
Huggins Law Firm LLC
110 Norcross Street
Roswell, Georgia 30075
remington@lawhuggins.com
mdturner@lawhuggins.com
fpeebles@lawhuggins.com
*Attorneys for Plaintiffs Benjamin Fishel-Brown and
Stephanie Fishel-Brown*

This 29th day of April, 2021.

SWIFT, CURRIE, McGHEE & HIERS

/s/ Kristen M. Vigilant
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
**Attorneys for Defendant State Farm
Fire and Casualty Company**

1355 Peachtree St., N.E., Suite 300
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com